{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Charles Groves, appeals the decision of the Monroe County Court of Common Pleas which found him guilty of one count of rape in violation of R.C. 2907.02, a first degree felony; one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331, a fourth degree felony; and. sentenced him to consecutive terms on those convictions. The issues before us are: 1) whether the trial court properly found the child witness in this case was competent to testify; 2) whether Groves was prejudiced by the admission of the child's out-of-court statements to a school nurse; 3) whether the trial court made the requisite findings to sentence Groves to consecutive sentences; and, 4) whether the trial court erred in classifying Groves as a sexual predator. We conclude Groves bore the burden of demonstrating an articulable reason why the child witness was incompetent to testify since she was ten years of age or older at the time of trial and that he did not so demonstrate, that he was not prejudiced by the improper admission of the hearsay evidence as it was merely cumulative, that the trial court made the findings necessary to sentence him to consecutive sentences and that the trial court's determination that Groves was a sexual predator was supported by competent, credible evidence. Thus, we affirm the trial court's decision.
 {¶ 2} The child who was victimized in this case was born on May 11, 1990. About two months after the child was born, her mother gave custody of the child to her aunt and uncle, Groves and his wife, Sharon. The child knew these two as "Mommy" and "Daddy". The child has an intelligence of 80 and is in a special class for developmentally handicapped children at school.
 {¶ 3} On April 30, 1999, when she was eight years old, the child approached her teacher, Tracie Brown, and told Brown she wasn't feeling good. Brown sent her to the bathroom to see if she would feel any better. When the child returned from the bathroom, she told Brown she was bleeding from the butt. Brown then sent the child to the school nurse, Noreen Decker. At first, the child would not tell Decker what was wrong. Then she asked Decker if she was going to tell the child's mother what was wrong. Eventually, the child told Decker that Groves had stuck his finger "where she peed" and wiggled it.
 {¶ 4} After Decker initially saw the child, she reported the incident to children's services. Decker saw the child two more times over the course of the next two weeks. An employee of children's services accompanied Decker the second time she talked to the child. However, that person was not with Decker and the child the entire time. Decker was also accompanied by a sheriff's deputy during some of the time she talked to the child. After listening to Decker talk to the child, the sheriff's deputy wanted to talk to Groves about the allegations. Because no one was at home when the deputy attempted to contact him, the sheriff's department notified local police forces they were looking for Groves.
 {¶ 5} Shortly thereafter, a police officer was on patrol when he heard Groves was at a local gas station. He knew the sheriff's department was looking for Groves and, after Groves left the gas station, the police officer turned on his overhead warning lights and activated his siren in an attempt to stop Groves. Groves accelerated and proceeded to elude sheriff's deputies and police officers in a car chase over portions of three counties for about an hour. The chase ended when Groves crashed his vehicle. However, when law enforcement officers reached the vehicle, Groves had exited. He was not in police custody until eighteen hours after the crash.
 {¶ 6} One week later, the Monroe County Grand Jury returned an indictment charging Groves with two counts: 1) rape, a first degree felony, in violation of R.C. 2907.02 and 2) failure to comply with an order or signal of a police officer, a fourth degree felony, in violation of R.C. 2921.331 with a specification for causing a substantial risk of serious physical harm to persons or property through the operation of a motor vehicle while failing to comply with the order or signal of the police officer. After various motions and hearings, including one that established Groves' competence to stand trial, the matter proceeded to jury trial, where Groves was found guilty on both counts of the indictment and the specification. The trial court held a sentencing hearing and sexual predator status hearing following Groves' conviction, sentenced him to a term of nine years on the first charge; eighteen months on the second charge; ordered these terms to be served consecutively; and, adjudicated him to be a sexual predator under R.C. Chapter 2950.
 {¶ 7} We affirm the trial court's decision for a variety of reasons. First, children who are ten years of age or older are presumed competent to testify. Therefore, the opponent of that witness must demonstrate an articulable reason why the child would be incompetent to testify. At voir dire, Groves failed to so demonstrate. Therefore, the trial court did not err when it found the child competent to testify at trial. Second, the child's out-of-court statements to Decker were inadmissible hearsay given the circumstances of the case. However, Groves was not prejudiced by their admission as that evidence was merely cumulative. Third, the trial court made the necessary findings to sentence Groves to consecutive sentences pursuant to R.C. 2929.14(E)(3) and, thus, did not need to make findings in accordance with R.C.2929.14(E)(4). Finally, the trial court based its sexual predator determination on both the fact that the victim was of tender years and the fact that Groves displayed a history of having improper sexual conduct with the minor female members of his household. Thus, the evidence clearly and convincingly demonstrated that Groves is a sexual predator.
 {¶ 8} In his first assignment of error, Groves argues as follows:
 {¶ 9} "The trial court abused its discretion by failing to properly voir dire [the child] to determine whether she was competent to testify under Evid.R. 601."
 {¶ 10} Groves argues the trial court erred when it found the child competent to testify at trial. We must note Groves did not object to the child's competence to testify at trial after the trial court conducted its voir dire of the child. Thus, this argument is waived unless Groves can establish plain error. See State v. Moore (Nov. 7, 2001), 7th Dist. No. 00AP0741, at 4. A reviewing court may consider a plain error which affects substantial rights even where it was not brought to the attention of the trial court. Crim.R. 52(B). Plain error is an "`obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings.'" Moore at 4 quoting State v. Craft (1977),52 Ohio App.2d 1, 7, 6 O.O.3d 1, 367 N.E.2d 1221. The plain error doctrine should only be applied in extremely rare cases involving exceptional circumstances where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, challenging the legitimacy of the underlying judicial process itself.Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099.
 {¶ 11} "`To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice.'" State v. Cole (May 18, 2001), 7th Dist. No. 98-BA-33, at 2 quoting State v. Nielsen (1990), 66 Ohio App.3d 609, 611,585 N.E.2d 906.
 {¶ 12} Pursuant to Evid.R. 601(A), children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined or of relating them truly are incompetent to testify. "Under the plain meaning of Evid.R. 601(A), a child witness who is ten years of age or older at the time of trial, but who was under the age of ten at the time an incident in question occurred, is presumed competent to testify about the event." State v.Clark (1994), 71 Ohio St.3d 466, 644 N.E.2d 331, paragraph one of the syllabus. However, a trial court, in its discretion, may choose to conduct a voir dire examination of a child witness who is ten years of age or older if the judge has reason to question the child's competency. Id. at paragraph two of the syllabus. A trial court's decision on the competency of a witness will not be disturbed absent an abuse of discretion. Id. at 469. An "abuse of discretion" requires more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Id. at 470.
 {¶ 13} In the present case, the child was ten years old when she testified. Thus, if the trial court had not found reason to voir dire her on her competency to testify before it allowed her to testify, then she would have been presumed competent to testify. Groves contends that because the State agreed the trial court should voir dire this child, the presumption of competency no longer exists when the trial court is determining the child's competence to stand trial and that the proponent of the child as a witness must affirmatively demonstrate her competence to testify.
 {¶ 14} In its decision in Clark, the Ohio Supreme Court did not specifically address which party bears the burden of demonstrating the competence or incompetence of the witness to testify, if the court has reason to suspect the witness may be incompetent. However, it is implicit in Clark that the party challenging the competence of a child ten years or older bears the burden of demonstrating the incompetence of that witness. As the court stated, Evid.R. 601(A) "`favors competency, conferring it even on those who do not benefit from the presumption * * *.' As a result, absent some articulable concern otherwise, an individual who is at least ten years of age is per se competent to testify." Clark at 469, quoting Turner v. Turner (1993), 67 Ohio St.3d 337,343, 617 N.E.2d 1123. The presumption of competency "recedes in those cases where a witness is either of unsound mind or under the age of ten. In such cases, the burden falls on the proponent of the witness to establish that the witness exhibits certain indicia of competency." Id.
 {¶ 15} A trial court should use the test established by State v.Frazier (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, certiorari denied (1992), 503 U.S. 941, 112 S.Ct. 1488, 117 L.Ed.2d 629, to determine whether a child under the age of ten is competent to testify. Id. Under this test, a trial court which is determining whether a child is competent to testify must take in to consideration the following factors: the child's ability to receive accurate impressions of fact; the child's ability to recollect those impressions; the child's ability to communicate what is observed; the child's understanding of truth and falsity; and, the child's appreciation of his or her responsibility to tell the truth. Frazier at syllabus.
 {¶ 16} As the court in Clark stated, the burden falls on the proponent of the witness under ten years of age to establish the witness exhibits certain indicia of competency because the presumption of competency recedes for these witnesses of tender years. However, when a witness is ten years of age or older, that presumption has not receded and the burden of establishing the incompetence of that witness falls on the opponent of that witness. State v. Leyman (Oct. 4, 2000), 9th Dist. No. 2970-M; State v. Jett (Mar. 31, 1998), 11th Dist. No. 97-P-0023. Thus, in cases where the child is ten years of age or older, the court must still apply the test established in Frazier to determine the child's competence or incompetence to testify. State v. Russell (Nov. 15, 2000), 3rd Dist. No. 15-2000-07; State v. Boehm (Dec. 31, 1997), 2nd Dist. No. 16335; State v. Sowards (July 12, 1996), 4th Dist. No. 90 CA 1923. Normally, when a trial court applies the Frazier test, the proponent of the witness bears the burden of demonstrating the witness is competent.Clark, supra. In contrast, when a witness is normally presumed competent under Evid.R. 601(A), the party opposing that child's testimony must overcome the presumption of competency by demonstrating some articulable reason why the witness would be incompetent to testify.
 {¶ 17} In this particular case, the trial court asked the child if she knew why she was in court and she responded, "Because of the trial." The court asked if she knew what it is to lie. The child responded, "It's bad." The trial court then asked if she knew the difference between the truth and a lie. The child responded, "A lie is something when you know what happened and you say that it's something else." She then responded affirmatively when the court asked if the truth is when you tell what did happen. Finally, her testimony reveals she knew her birth date, where she went to school, what town her school was in, who she lived with, and the names of her pets. These statements do not demonstrate an articulable reason why the child would be incompetent to testify. Indeed, they demonstrate the child may have been competent to testify even if she were under ten years of age. Her responses tend to demonstrate her ability to receive accurate impressions of fact, her ability to recollect those impressions, her ability to communicate what is observed, her understanding of truth and falsity, and her appreciation of her responsibility to tell the truth. See Frazier, supra. Accordingly, the trial court did not plainly err when it found the child competent to testify. Groves' first assignment of error is meritless.
 {¶ 18} In his second assignment of error, Groves argues:
 {¶ 19} "The trial court erred when it rules that the school nurse's testimony as to what [the child] told her fell within the hearsay exception found in Evid.R. 803(4)."
 {¶ 20} At trial, Decker testified the child told her Groves had stuck his finger "where she peed" and wiggled it. Groves timely objected to this testimony, claiming it was hearsay. The trial court overruled Groves' objection, finding the child's statement to Decker was made for the purposes of diagnosis or medical treatment and, thus, fell within the hearsay exception found in Evid.R. 803(4). Groves argues the statements the child made to Decker were not made for the purposes of diagnosis or medical treatment, but rather were made during the course of a fact-finding or investigatory procedure and, therefore, do not fall within the hearsay exception found in Evid.R. 803(4).
 {¶ 21} Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible in evidence unless it meets one of the recognized exceptions to the hearsay rule. Evid.R. 802. Pursuant to Evid.R. 803(4), statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment are not hearsay even if the declarant is available as a witness. Medical diagnosis or treatment can apply to both physical and psychological treatment. State v. Chappell (1994), 97 Ohio App.3d 515,646 N.E.2d 1191. In order for out-of-court statements to fall within this hearsay exception, the examination should be for medical diagnosis or treatment and not to gather information against the accused. State v.Vaughn (1995), 106 Ohio App.3d 775, 667 N.E.2d 82. However, a child's statement concerning the identity of the abuser may be admissible under Evid.R. 803(4). State v. Dever (1992), 64 Ohio St.3d 401, 596 N.E.2d 436, paragraph two of the syllabus.
 {¶ 22} A trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception and its decision will not be reversed absent an abuse of that discretion. Id. at 410. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 23} The Ohio Supreme Court has noted "the continuing problem of reaching just results in child abuse cases involving statements made by young children during the course of a medical examination." Dever at 404. Under Ohio law, Evid.R. 803(4) focuses on the motivation of the declarant at the time the statement was made. Id. at 409. Applying this evidentiary rule in cases involving children is more difficult because "a young child would probably not personally seek treatment, but would generally be directed to treatment by an adult * * *." Id. Therefore, the child would not have the same motivation when seeing a doctor an adult would have. Id. at 410. However, although "the initial desire to seek treatment may be absent, * * * the motivation certainly can arise once the child has been taken to the doctor." Id. "`While in cases involving adults a cognitive connection between speaking the truth to physicians and receiving proper medical care may seem obvious, further analysis of the circumstances surrounding the examination of a child is necessary to determine whether the child understood the need to be truthful to the physician.'" Id. at 412, quoting Peoples v. Meeboer
(1992), 439 Mich. 310, 322-323, 484 N.W.2d 621. Thus, it has suggested, but not required, that trial court's conduct a voir dire to determine whether the child's out-of-court statements qualify under Evid.R. 803(4). State v. Demiduk (June 24, 1998), 7th Dist. No. 96-CO-16, at 7.
 {¶ 24} Accordingly, the Ohio Supreme Court held as follows:
 {¶ 25} "The trial court should consider the circumstances surrounding the making of the hearsay statement. If the trial court finds in voir dire that the child's statements were inappropriately influenced by another, then those statements would not have been made for the purpose of diagnosis or treatment. This inquiry will vary, depending on the facts of each case. For example, the trial court may consider whether the child's statement was in response to a suggestive or leading question (as was the case in Idaho v. Wright [(1990), 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638]), and any other factor which would affect the reliability of the statements (such as the bitter custody battle in State v. Boston
[(1989), 46 Ohio St.3d 108, 545 N.E.2d 1220]). If no such factors exist, then the evidence should be admitted. The credibility of the statements would then be for the jury to evaluate in its role as fact-finder. In addition, the witness whose testimony brings in the child's hearsay statement can be cross-examined about the circumstances surrounding the making of the statement. But if the trial court discerns the existence of sufficient factors indicating that the child's statements were not made for the purpose of diagnosis or treatment, the statements must be excluded as not falling within Evid.R. 803(4)." Id. at 410-411.
 {¶ 26} In some circumstances, courts have allowed a child's out-of-court statement identifying a sexual abuser into evidence via Evid.R. 803(4) even after the police have been contacted. For example, Inre Hopson (Mar. 21, 2002), 3rd Dist. No. 9-01-54, was a delinquency case wherein a juvenile was charged with gross sexual imposition and rape of a four year-old child. After the child told her parents, they called the police. The police then took the victim to the hospital where the victim told the nurse what had happened and named the defendant as the perpetrator. The trial court allowed the child's out-of-court statements in to evidence via the nurse's testimony. The Third District upheld the defendant's conviction, finding the child was not asked "unduly suggestive" questions which would have "inappropriately influenced" the victim's statements. Id. at 7.
 {¶ 27} "This is true especially in light of the circumstances, whereby she became scared upon seeing him immediately following the abuse, pointed to him upon seeing him, repeatedly stated that he was the one that hurt her, indicated that she knew his face, and relayed the same information to her mother, her father, and Nurse Baney at different times." Id. at 7-8.
 {¶ 28} In another delinquency action, the defendant was charged with raping two small children. In re Wheeler (Mar. 20, 2002), 9th Dist. No. 20503. After the sexual abuse was reported to the police, a police detective scheduled an appointment at the local children's hospital. The detective watched the children's interview by a social worker via a television set. The Ninth District upheld the trial court's decision to let the children's statements at the hospital into evidence, noting the police were not involved in the medical evaluations and the social worker who conducted the interview did so in order to present the information to a physician in order to facilitate a medical evaluation.
 {¶ 29} Finally, in State v. Childers (Dec. 19, 1996), 10th Dist. No. 96APA05-640, the defendant was charged with one count of felonious sexual penetration and one count of gross sexual imposition. The issue on appeal was whether the trial court abused its discretion when it allowed a doctor to testify as to the minor victim's out-of-court statements to that doctor. The defendant argued those statements could not be used as a police officer and a social worker, among others, had contact with the child both before and during the time the child was making the statements to the doctor. The police arrived at the defendant's residence and immediately removed the child. Shortly thereafter, the child was taken to the hospital for an examination. The only people to have contact with the child after she left the presence of the defendant were the police and hospital personnel. The Tenth District found the statements the child made to the doctor were within the Evid.R. 803(4) exception to the hearsay rule even though police officers were present during portions of the examination. "The record is devoid of any evidence that would indicate that any of those people knew Ashley or the appellant, or that they had any motivation to persuade Ashley to speak untruthfully." Id at 8.
 {¶ 30} Turning to the facts of this case, the child told her teacher she was bleeding from the butt. She was then sent to the school nurse's office. While the child was at the nurse's office, she told the nurse she had a stomachache, but was reluctant to go into any detail. After asking if the nurse would tell her mother, the child told the nurse her daddy touched her in her private areas. The child went on to describe how "daddy" had inserted his index finger inside of her. These statements clearly fit within Evid.R. 803(4). They were made to the school nurse in the nurse's office while the nurse was trying to diagnose what was wrong with the child.
 {¶ 31} In contrast, we determine the child's out-of-court statements in the second and third visits with Decker do not fit within Evid.R. 803(4) and that it was during those visits that the child specifically identified Groves as "daddy". Because the focus of Evid.R. 803(4) is on the motivation of the declarant when he or she is making the out-of-court statement, Dever, supra, Decker's motivation in obtaining the information is irrelevant. Here, the child had, in her mind, already identified the person who had sexually abused her, "daddy". During her second and third visits to the nurse's office, the child saw police officers and social workers in the same office as the school nurse. Only then did she identify Groves as "daddy". Given these circumstances, it is unreasonable to find the child would have believed her statements were being made solely for the purposes of medical treatment and the trial court abused its discretion in allowing the child's statements from the second and third interviews into evidence.
 {¶ 32} Even though we conclude the trial court abused its discretion when it allowed the statements into evidence, that error is harmless. As stated above, the child's out-of-court statements that "daddy" abused her were clearly admissible. In her testimony at trial, the child said she called Groves, "Dad". Thus, the improperly admitted hearsay identifying Groves as "daddy" was cumulative to the child's testimony and Groves was not prejudiced by their admittance into evidence. Groves' second assignment of error is meritless.
 {¶ 33} In his third assignment of error, Groves asserts:
 {¶ 34} "The trial court erred when it imposed consecutive sentences upon the Defendant-Appellant without first setting forth the required findings under R.C. 2929.14(E)(4)."
 {¶ 35} A trial court may only sentence an offender to consecutive sentences for felony offenses under certain circumstances pursuant to R.C. 2929.14(E). Contrary to Groves' assertion, R.C. 2929.14(E)(4) is not the only basis upon which a court may impose consecutive sentences. For example, "[i]f a prison term is imposed for a * * * felony violation of division (B) of section 2921.331 of the Revised Code, the offender shall serve that prison term consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." R.C. 2929.14(E)(3).
 {¶ 36} Whenever a trial court imposes consecutive sentences in accordance with R.C. 2929.14, it must state its reasons for doing so on the record. R.C. 2929.19(B)(2)(c). Failure to make either the necessary findings on the record or to sufficiently state the reasons for that finding on the record constitutes reversible error. State v. Gary
(2001), 141 Ohio App.3d 194, 196, 750 N.E.2d 640.
 {¶ 37} In this case, Groves was found guilty of a felony violation of R.C. 2921.331. It is plain from the record that the trial court ordered Groves' sentences run consecutively because he was found guilty of a felony conviction of R.C. 2921.331. Groves' argument that the trial court did not make the necessary findings under R.C. 2929.14(E)(4) is immaterial as it made the findings necessary under R.C. 2929.14(E)(3). Groves' third assignment of error is meritless.
 {¶ 38} In his fourth and final assignment of error, Groves asserts:
 {¶ 39} "The trial court erred in classifying Defendant-Appellant as a sexual predator when it failed to consider all the factors set forth in R.C. 2950.09(B)(2)(a) through (j)."
 {¶ 40} Groves argues the trial court only considered the ages of the offender and the victim and that a review of all the factors set forth in R.C. 2950.09(B)(2)(a) through (j) demonstrates he is not a sexual predator. Thus, his argument is that the trial court's determination that he was a sexual predator is against the manifest weight of the evidence. The standard of review to be applied by this court to the trial court's decision is set forth in State v. Hardie
(2001), 141 Ohio App.3d 1, 4, 749 N.E.2d 792:
 {¶ 41} "Sexual predator classification proceedings under R.C. 2950.09 are civil in nature and require the prosecution to prove by clear and convincing evidence that an offender is a sexual predator. R.C. 2950.09(B); State v. Cook (1998), 83 Ohio St.3d 404, 408, (citations omitted). We will not reverse a trial court's determination that an offender is a sexual predator if some competent credible evidence supports it. State v. Morris (July 18, 2000), Washington App. No. 99CA47, unreported, (citations omitted); State v. Daugherty (Nov. 12, 1999), Washington App. No. 99CA09, unreported, (citations omitted); State v. Meade (Apr. 30, 1999), Scioto App. No. 98CA2566, unreported, (citations omitted). This deferential standard of review applies even though the state must prove that the offender is a sexual predator by clear and convincing evidence. Meade."
 {¶ 42} Recently, in State v. Eppinger (2001), 91 Ohio St.3d 158,166, 743 N.E.2d 881, the Ohio Supreme Court adopted the following model procedure for sexual offender classification hearings:
 {¶ 43} "In a model sexual offender classification hearing, there are essentially three objectives. First, it is critical that a record be created for review. Therefore, the prosecutor and defense counsel should identify on the record those portions of the trial transcript, victim impact statements, presentence report, and other pertinent aspects of the defendant's criminal and social history that both relate to the factors set forth in R.C. 2950.09(B)(2) and are probative of the issue of whether the offender is likely to engage in the future in one or more sexually oriented offenses. If the conviction is old, as in this case, the state may need to introduce a portion of the actual trial record; if the case was recently tried, the same trial court may not need to actually review the record. In either case, a clear and accurate record of what evidence or testimony was considered should be preserved, including any exhibits, for purposes of any potential appeal.
 {¶ 44} "Second, an expert may be required, as discussed above, to assist the trial court in determining whether the offender is likely to engage in the future in one or more sexually oriented offenses. Therefore, either side should be allowed to present expert opinion by testimony or written report to assist the trial court in its determination, especially when there is little information available beyond the conviction itself. While providing an expert at state expense is within the discretion of the trial court, the lack of other criteria to assist in predicting the future behavior of the offender weighs heavily in favor of granting such a request.
 {¶ 45} "Finally, the trial court should consider the statutory factors listed in R.C. 2950.09(B)(2), and should discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism." (Citations omitted).
 {¶ 46} A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). The factors a trial court must look at when making a sexual predator determination include, but are not limited to those in R.C. 2950.09(B)(2). These include: the offender's age; the offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses; the age of the victim of the sexually oriented offense for which sentence is to be imposed; whether the sexually oriented offense for which sentence is to be imposed involved multiple victims; whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting; if the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders; any mental illness or mental disability of the offender; the nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse; whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty; and any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(2).
 {¶ 47} These factors are only guidelines and a judge has the discretion to determine what weight, if any, he or she will assign to each guideline. State v. Thompson (2001), 92 Ohio St.3d 584,752 N.E.2d 276, paragraph one of the syllabus. A trial court may also consider any other evidence it deems relevant in determining the likelihood of recidivism. Id. In addition, merely because a defendant has committed a sexually oriented offense is not proof, without further evidence or compelling facts, that he is likely to engage in future sexually oriented offenses. State v. Ward (1999), 130 Ohio App.3d 551,558, 720 N.E.2d 603.
 {¶ 48} "After reviewing all testimony and evidence presented at the hearing, * * * the judge shall determine by clear and convincing evidence whether the offender is a sexual predator." R.C. 2950.09(B)(3). Clear and convincing evidence is the evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122, 568 N.E.2d 1222. While clear and convincing evidence is more than a preponderance of the evidence, it does not rise to the level of evidence beyond a reasonable doubt. State v. Ingram
(1992), 82 Ohio App.3d 341, 346, 612 N.E.2d 454.
 {¶ 49} R.C. 2950.09(B)(2) does not require the court list the criteria it uses in making its sexual predator determination, only to "consider all relevant factors, including" the criteria in the statute in making his or her findings. State v. Cook (1998), 83 Ohio St.3d 404,426, 700 N.E.2d 570. In addition, R.C. 2950.09(B)(2) does not require that each factor be met; rather, it simply requires the trial court consider those factors that are relevant. State v. Grimes (2001),143 Ohio App.3d 86, 89, 757 N.E.2d 413. In a sexual predator hearing the Rules of Evidence are not strictly applied and the court can look to reliable hearsay, such as a pre-sentence investigation report. Id. at 425. "Once it is established that the offender has committed a sexually oriented offense, the key to any sexual-offender-classification hearing is determining whether the offender is likely to reoffend in the future."State v. Hunter (2001), 144 Ohio App.3d 116, 122, 759 N.E.2d 809. However, the trial court must discuss in the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of committing a future sexually oriented offense. Eppinger at 166.
 {¶ 50} A finding that a defendant is a sexual predator usually must be based on more than the commission of the underlying offense. Id. For example, the fact that the victim of the sexually oriented offense is a child is not, in and of itself, sufficient to classify an offender as a sexual predator. Hunter at 123; Grimes.
 {¶ 51} "[I]f we were to adjudicate all sexual offenders as sexual predators, we run the risk of `being flooded with a number of persons who may or may not deserve to be classified as high-risk individuals, with the consequence of diluting both the purpose behind and the credibility of the law. This result could be tragic for many.'" Id. at 165, quotingState v. Thompson (Apr. 1, 1999), 8th Dist. No. 73492.
 {¶ 52} However, the fact that the sexually oriented offense is committed against a minor can be a fact the court considers in determining whether the offender is likely to recidivise.
 {¶ 53} "[T]here is a high potential of recidivism among sex offenders whose crimes involve the exploitation of young children . . . any offender disregarding the universal legal and moral reprobation [against sexually molesting young children] demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable.'"State v. Thompson (Sept. 21, 2001), 7th Dist. No. 99JE51, at 3, quotingState v. Ivery (May 23, 2000), 10th Dist. No. 99AP 628.
 {¶ 54} In the present case, Groves was convicted of a sexually oriented offense. During the sexual predator determination hearing, the trial court listed all the factors in R.C. 2950.09(B)(2). It found he was in his late forties when he committed the offense and that the victim was eight at the time of the offense. The trial court's judgment entry reflects these two factual findings. At the conclusion of the hearing, the trial court also found this was not an isolated incident. The victim's sister testified during the hearing that Groves had sexual contact with her when she was a child. Groves' wife stated the victim's sister had told her about that abuse at the time and that the sister was placed in foster care temporarily. The State also produced a signed statement by Groves which admitted to sexual contact with the sister. "But when My Dauter [sic] Autumn was caut [sic] having sex whit [sic] her Boyfriend, I tryed [sic] to scair [sic] her. Thats [sic] when I tuck [sic] her private. I stuck my finger in her pussy to scair [sic] her not for pleasure."
 {¶ 55} It appears the only reason Groves was not charged with this offense is because it was not within the statute of limitations. In his testimony, Groves states he doesn't remember that incident. "I was considered mentally messed up whenever I first got out of the service for quite a while, and I was on several different medications." He says the only time he touched the victim in this case was when he had to place a medicated salve on the child "because it was sore." The trial court's judgment entry does not reflect its finding that the underlying offense was not an isolated incident.
 {¶ 56} The Ohio Supreme Court in Eppinger stated a trial court must state its reasons for classifying the offender as a sexual predator in the record. As stated above, the trial court noted the ages of both Groves and the child and the fact that this was not an isolated incident as Groves had previously had improper sexual contact with a minor female living in his household. Groves' argument that the trial court only considered the ages of the offender and the victim is incorrect.
 {¶ 57} The trial court's determination that Groves was a sexual predator is supported by competent, credible evidence. In this case, Groves' sexual predator determination was based on more than the fact that he had committed this offense. It was also based on the prior sexual acts he committed against his other daughter that he, his wife, and that daughter testified to during the sexual predator hearing. Therefore, the trial court's decision finding Groves a sexual predator was based on competent, credible evidence and, thus, was not against the manifest weight of the evidence. Accordingly, Groves final assignment of error is meritless.
 {¶ 58} For the foregoing reasons, we find each of Groves assignments of error are meritless. Accordingly, the decision of the trial court is affirmed.
Vukovich, P.J., concurs.
Donofrio, J., concurs.