The STATE of Ohio, Appellee,

v.

HUNTER, Appellant.

[Cite as *State v. Hunter* (2001), 144 Ohio App.3d 116.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000266.

Decided June 1, 2001.

*Michael K. Allen*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for appellee.

*Christine Jones*, for appellant.

*Per Curiam.*

Following a jury trial, defendant-appellant Brent Hunter was found guilty of rape, in violation of R.C. 2907.02(A)(1), and gross sexual imposition, in contravention of R.C. 2907.05(A)(4). Hunter was sentenced as appears of record and adjudicated a sexual predator. Hunter raises six assignments of error in this appeal.

█ Hunter first alleges that he was denied his constitutional right to effective assistance of counsel. He maintains that his trial counsel was ineffective by failing to object to the admission of evidence concerning Hunter's prior criminal conduct. During counsel's cross-examination of the victim, who was only ten years old, the following exchange occurred:

"Q: Okay. Before you say this happened, did you hate Brent before this?

"A: Actually, no, I didn't, because he was nice when he got out of jail.

"Q: Okay. And so he wasn't such a grouch anymore?

"A: He wasn't such a grouch anymore."

█ Generally, a properly licensed attorney is presumed competent, and when raising an ineffectiveness-of-counsel argument, the defendant bears the burden of demonstrating that counsel's performance fell below an objective standard of reasonable representation, and that the defendant was prejudiced by counsel's ineffectiveness.[1] After reviewing the alleged instance of misconduct, we are unconvinced that counsel's failure to object to testimony that she herself had inadvertently elicited was deficient. Counsel's failure to object to the testimony may well have been tactical, so as not to draw attention to the victim's testimony.[2] Having failed to establish any deficiency, we overrule the first assignment of error.

█ In the second and third assignments of error, Hunter challenges the sufficiency and the weight of the evidence. Hunter argues that the evidence fell short of the mark because no physical evidence of rape existed, and because there were discrepancies in the testimony relating to when the offenses occurred and how the victim was sexually abused.

█ To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[3] To reverse on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created

---

1. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus; *State v. Hamblin* (1988), 37 Ohio St.3d 153, 156, 524 N.E.2d 476, 479.

2. See *State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407, 417.

3. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

a manifest miscarriage of justice.[4] A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction.[5]

After reviewing the record in the light most favorable to the prosecution, we are convinced that a rational trier of fact could have concluded that the elements of rape and gross sexual imposition had been established. The evidence showed that the victim was nine years old at the time of the offenses. Hunter, who was the father of the victim's brother, had previously lived with the two children and their mother. On August 29, 1999, the victim and her brother spent the night at Hunter's condominium. The victim testified that, while they were at Hunter's condominium, Hunter had massaged her legs and then anally raped her. She further testified that he had rubbed his penis on her vagina and ejaculated on her. Dr. Elena Duma examined the victim several months after the alleged rape and did not observe physical evidence of sexual abuse. Dr. Duma explained that the lack of physical findings did not exclude the possibility of sexual abuse, and that it was common to find no evidence of physical abuse on girls who had been vaginally or anally raped.

Moreover, we are unconvinced that the trial court improperly weighed the evidence. The trial court apparently found the testimony (particularly as it related to the type of abuse and the date of abuse) of the victim, Hunter's employer, the victim's guardians, and the doctor to be more credible than the testimony of the victim's grandmother and aunt, and Hunter's mother and sisters. Because the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact,[6] we cannot say that, as a matter of law, the trial court improperly weighed the evidence. In this case, the evidence presented at trial appropriately supported Hunter's convictions. Under these circumstances, we are not persuaded that the court lost its way by finding Hunter guilty of rape and gross sexual imposition. Accordingly, we overrule the second and third assignments of error.

In the fourth assignment, Hunter argues that he was prejudiced by the removal of a juror during trial. Specifically, he maintains that he was prejudiced by the court's failure to question the remaining jurors about whether they had been improperly influenced by the removed juror.

During the trial, a juror expressed concern over her own partiality. The trial court examined the juror and, pursuant to Hunter's request, removed her.

---

4. See *State v. Thompkins, supra,* at 387, 678 N.E.2d at 546–547.

5. See *id.*

6. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Under these circumstances, we are unpersuaded that Hunter was prejudiced by the trial court's actions, particularly where the juror was dismissed and there was no evidence demonstrating that other jurors had been influenced by the removed juror. Accordingly, we overrule the fourth assignment or error.

In the fifth and sixth assignments, Hunter challenges the sufficiency and the weight of the evidence giving rise to the sexual-predator adjudication. As we have discussed, the concepts of sufficiency and weight are quantitatively and qualitatively distinct in a criminal proceeding.[7] But in a civil proceeding, qualitative and quantitative distinctions between weight and sufficiency of the evidence are not recognized.[8] Because R.C. Chapter 2950 is remedial in nature and not punitive, we must apply the civil standard to the sexual-predator adjudication.[9] Under the civil standard, the trial court's judgment will not be reversed as being against the manifest weight of the evidence, so long as it is supported by some competent and credible evidence going to all the essential elements of the case.[10] Therefore, we address the fifth and sixth assignments of error together and consider whether some competent and credible evidence supports the trial court's sexual-predator determination.

A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."[11] At a sexual-offender-classification hearing, the state must prove by "clear and convincing evidence" that the offender is a sexual predator.[12] Clear and convincing evidence is not unequivocal but is that measure of proof that produces a firm belief as to the allegations sought to be established.[13] When determining whether an offender is a sexual predator, the trial court is guided by the factors outlined in R.C. 2950.09(B)(2):

"(a) The offender's age;

---

7. See *State v. Thompkins, supra.*

8. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. See, also, *Lakeshore Properties v. Sharonville* (Feb. 16, 2001), Hamilton App. No. C-000321, unreported, 2001 WL 127650.

9. See *State v. Cook* (1998), 83 Ohio St.3d 404, 417, 700 N.E.2d 570, 581.

10. See *C.E. Morris Co. v. Foley Constr. Co., supra,* at syllabus.

11. R.C. 2950.01(E).

12. R.C. 2950.09(B)(3).

13. See *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, syllabus.

"(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;

"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;

"(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;

"(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

"(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;

"(g) Any mental illness or mental disability of the offender;

"(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in sexual context was part of a demonstrated pattern of abuse;

"(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;

"(j) Any additional behavioral characteristics that contribute to the offender's conduct."

 Once it is established that the offender has committed a sexually oriented offense, the key to any sexual-offender-classification hearing is determining whether the offender is likely to reoffend in the future. While we acknowledge that recidivism is difficult to anticipate, the trial court should be guided by the Ohio Supreme Court's recent decision in *State v. Eppinger*,[14] where the court identified a model procedure for a sexual-offender-classification hearing.[15] At a classification hearing, the trial court should provide for appellate review a record

---

14. (2001), 91 Ohio St.3d 158, 743 N.E.2d 881.

15. See *id.* at 166, 743 N.E.2d at 888–889. See, also, *State v. Ingram* (May 11, 2001), Hamilton App. No. C–000718, unreported, 2001 WL 497095; *State v. Allen* (2001), 142 Ohio App.3d 291, 755 N.E.2d 440.

that addresses the factors outlined in R.C. 2950.09(B)(2), and that contains probative evidence as to whether the offender is likely to recidivate. Further, the trial court should permit the admission of expert testimony, where required, to assist the court in determining whether recidivism is likely. Finally, the trial court should consider the R.C. 2950.09(B)(2) factors and "discuss on the record the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism."[16]

In this case, the sexual-offender-classification hearing was conducted as a part of the sentencing hearing, as permitted under R.C. 2950.09(B)(1), by the same judge who presided over Hunter's trial. While the prosecution had requested that the court take "judicial notice" of the facts of the case, the prosecutor related that the offenses here involved anal penetration and genital manipulation of a nine-year-old victim. A presentence-investigation report ("PSI") was admitted into evidence. Neither the defense nor the prosecution presented any witnesses. In finding Hunter to be a sexual predator, the trial court considered the following R.C. 2950.09(B)(2) factors:

"All right. I've verified the offender's age; the offender's prior criminal record regarding all offenses, and I agree with counsel in looking at his prior record; I'm looking at the age of the victim; and I'm looking at whether there were multiple victims, and the answer to that is obviously not; whether the offender used drugs or alcohol to impair the victim, and the answer is obviously not; whether the offender participated in available sex offender programs, and the answer is obviously not; any mental illness or disability of the offender, and the answer is obviously not; whether the offender displayed cruelty, I'm going to put a no; any additional behavior characteristics, none. That leaves nature of the offense and whether there is a demonstrative pattern of abuse. I agree with both counsels in regards to this is the definite rape of a nine-year-old, and I think the fact that this is a child, the fact that his victim is of this tender age and the type of rape that this particular case was involved with, I think that all screams one thing.

"Sexual predator designation will be found. * * *"

 It is uncontested that Hunter had been found guilty of rape and gross sexual imposition, which are sexually oriented offenses; thus, the issue for the trial court to determine was whether Hunter was likely to commit another sexually oriented offense in the future. Having reviewed the record, including

16. *State v. Eppinger, supra,* at 166, 743 N.E.2d at 889.

the transcript of the classification hearing and the PSI, we are unconvinced that the state presented competent, credible evidence that Hunter is likely to engage in one or more sexually oriented offenses in the future. While Hunter has had other prior convictions, he has not been previously convicted of a sexually oriented offense, other than the two underlying offenses. We have stated that the legislature did not contemplate that sexually oriented offenders would be found to be sexual predators solely because they had been convicted of or pleaded guilty to a sexually oriented offense; otherwise, the hearing requirement of R.C. 2950.09(B)(1) would not be statutorily prescribed.[17] Thus, although the victim was nine years old when the underlying offenses were committed, we are unconvinced that the record demonstrates that Hunter is likely to commit another sexually oriented offense. The fifth and sixth assignments are sustained insofar as they challenge the weight of the evidence giving rise to the sexual-predator adjudication.

Because the weight of the evidence does not support a finding that Hunter is likely to recidivate, we reverse the judgment of the trial court as it relates to the sexual-predator determination, and we remand this cause for a new hearing in accordance with the law and this decision. We remind the trial court that, on remand, the hearing should focus on whether Hunter is likely to commit sexually oriented offenses in the future. We affirm the judgment of the trial court in all other respects.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PAINTER, P.J., SUNDERMANN and WINKLER, JJ., concur.

---

17. See *State v. Hicks* (1998), 128 Ohio App.3d 647, 650, 716 N.E.2d 279, 280.