OPINION
{¶ 1} Defendant-appellant Henry R. Francisco ("appellant") appeals a judgment of the Lake County Court of Common Pleas, entering a stalking protection order pursuant to R.C. 2903.21.4 to protect plaintiff-appellee Theresa A. Miller and her boyfriend, Blake Mullins.
 {¶ 2} On April 26, 2002, Miller filed a petition for a stalking civil protection order pursuant to R.C. 2903.21.4. In the petition, Miller claimed appellant parked his car in her driveway for hours, had been mailing her odd things, following her, and calling and hanging up. That same day, the trial court issued an ex parte stalking civil protection order.
 {¶ 3} The matter came before the court for a full hearing on May 7, 2002. Miller testified that she and appellant dated until she ended the relationship more than a year ago. Miller described the relationship as being "on and off again" in nature, until she no longer wanted to continue. Miller stated appellant scared her, causing her to hide from her family. Appellant still succeeded in locating her. Miller had changed her telephone number eleven times in the last year. Miller said appellant sent her a box containing a piston, band-aid, antibiotic cream, Alka-seltzer, pictures of appellant, and an old shirt. Miller claimed appellant sent her unsigned cards. Miller averred the mail from appellant was scary to her. Miller testified appellant discovered where she worked by following her.
 {¶ 4} In his defense, appellant presented the testimony of two long-term acquaintances. They testified that the parties lived together and that appellant would not commit any type of physical harm or mental anguish to anyone.
 {¶ 5} Appellant testified that he met Miller at the Willoughby Brewery, where she was employed as a waitress. After they began to date, appellant learned that Miller was living with someone else. Appellant claimed Miller lied about nearly everything. When Miller left her live-in boyfriend, she briefly moved in with appellant. The two later resided together for a short period of time. Appellant stated he did not have a problem with Miller seeing other people during their relationship. Appellant admitted to meeting with Miller at the Tip Top Motel in Perry, her current residence, after he drove by and noticed her automobile parked there. Appellant stated Miller went to his home the following day, where they continued their intimate relationship. Appellant denied that Miller ever told him she did not want any mail from him. Appellant reported having been contacted by Miller numerous times since June of 2001. Miller filed a police report on June 24, 2001, in which she stated appellant was at the Tip Top Motel, in violation of a Temporary Protection Order. No such order had been issued. Miller denied ever living with appellant to the police. Miller inaccurately told the police she did not have a phone. Appellant stated he could not have followed Miller because he did not know where she worked or lived, until he saw her car at the motel.
 {¶ 6} At the hearing, the court stated that it thought the parties ought to stay away from each other and that was why the order would be granted. In the order, the court found that the parties had an on and off relationship that Miller wanted to end. The court found appellant followed Miller to work, sent unwanted parcels, and sat in his car outside her residence. The court granted the petition, with the order to remain in effect for one year. The order protected Miller and her boyfriend, Blake Mullins.
 {¶ 7} On May 13, 2002, appellant filed a request for findings of fact and conclusions of law. On June 6, 2002, the trial court issued its findings of fact and conclusions of law. The court found that the parties were involved with each other, but that Miller wanted to end the relationship. The court found it was in the best interests of the parties that they not have contact with each other. The court further found appellant made unwanted attempts to contact Miller by being present outside her residence, following her to work, contacting her at work, and sending unwanted parcels. The court concluded Miller had presented a sufficient enough case against appellant that he should be restrained from having any contact with her. The court relied upon appellant's actions of going to Miller's residence, sending unwanted parcels, following her, and contacting her at work, to show a pattern of stalking and harassment, necessitating the issuance of a protection order.
 {¶ 8} Appellant assigns the following error for review:
 {¶ 9} "The trial court erred in finding sufficient cause to issue a civil protection order against appellant."
 {¶ 10} In his sole assignment of error, appellant contends Miller did not prove, by a preponderance of the evidence, that he engaged in a pattern of conduct showing he knowingly caused Miller to believe he would cause her physical harm or mental distress. Appellant submits that, taking the evidence in a light most favorable to Miller, the order should not have been granted as she presented no witnesses or other evidence showing that appellant engaged in a pattern of conduct sufficient to warrant the issuance of a protection order. Appellant asserts that the trial court granted the order, not to prevent Miller from being harmed, but because it believed the parties should stay apart.
 {¶ 11} R.C. 2903.21.4 provides for the issuance of protection orders for persons who are victims of menacing by stalking. Issuance of a protection order requires the petitioner to establish that the respondent engaged in conduct constituting menacing by stalking. R.C. 2903.21.4(C)(1). Menacing by stalking is defined as "engaging in a pattern of conduct" which "causes another to believe that the offender will cause serious physical harm to the other person or cause mental distress to the other person." R.C. 2903.21.1(A). A "pattern of conduct" means two or more actions or incidents closely related in time. R.C. 2903.21.1 (C)(1). A court must take everything into consideration when determining if a respondent's conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening. Tuuri v. Snyder, 11th Dist. No. 2000-G-2325,2002-Ohio-2107, 2002 Ohio App. LEXIS 2060. The actions should be considered by viewing the effect on the petitioner. Id. Mental distress is "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.21.1(C)(2). A simple statement that a petitioner was distressed is insufficient to meet the statutory standard of mental distress. Lindsay v. Jackson (Sept. 8, 2000), 1st. Dist. No. C-990786, 2000 Ohio App. LEXIS 4043.
 {¶ 12} The statute has two independent prongs. Proof must be presented that the offender knowingly caused mental distress to another or that the offender knowingly caused another to believe that the offender would cause physical harm to another person. Id. A petitioner only need show that the respondent knowingly committed certain acts and, from those actions, the petitioner believed the respondent was going to cause her physical harm or mental distress. State v. Smith (1998),126 Ohio App.3d 193. A preponderance of the evidence standard applies to the granting of a stalking civil protection order. Tuuri, supra.
 {¶ 13} In a civil proceeding, qualitative and quantitative distinctions between weight and sufficiency of the evidence are not recognized. State v. Hunter (2001), 144 Ohio App.3d 116, 121. Therefore, under the civil standard, "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court." C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279.
 {¶ 14} The choice between credible witnesses and their conflicting testimony rests primarily with the finder of fact. An appellate court may not substitute its judgment for that of the fact finder. State v. Awan
(1986), 22 Ohio St.3d 120. The fact finder is free to believe all, part, or some of the testimony of each witness. State v. Caldwell (1992),79 Ohio App.3d 667.
 {¶ 15} At the conclusion of the hearing, the trial court stated "there is a problem here with these two people and that they ought to stay away from each other. They should not have any contact with each other. I'm going to grant the order." In its findings of fact and conclusions of law, the trial court found a pattern of conduct and that appellant's actions were sufficient to cause appellant to be restrained from all contact with Miller. The court, in its facts, found that appellant made unwanted attempts to contact Miller by being outside her residence and place of work. Further, appellant sent unwanted parcels to Miller.
 {¶ 16} At the hearing, Miller repeatedly stated that appellant scared her by driving by her house, putting nails in people's tires and gunshots in people's doors. Appellant sent unsigned cards and a letter saying he must have her. Miller testified appellant repeatedly contacted her after she wanted to end their relationship. Miller stated she moved and changed her telephone number several times in an effort to avoid appellant. Miller said she did not tell her family where she lived to try and hide from appellant. Miller claimed she did not let her children go outside because appellant's actions scared her. The situation was jeopardizing her shared parenting with her ex-husband. Miller also reported that appellant followed her to work, causing her to change jobs. The repeated, unwanted contact described by Miller shows a pattern of conduct by appellant. In response to that conduct, Miller moved several times, repeatedly changed her telephone number, sought different employment, and changed her behavior with her children. Her actions and testimony reflect that appellant's pattern of conduct caused Miller to feel scared. Therefore, both prongs of R.C. 2903.21.4 have been met.
 {¶ 17} Appellant's primary argument on appeal is that Miller was not a credible witness. Appellant contends he submitted evidence, in the form of police reports, which established Miller's lack of credibility. However, the trial court remains the primary arbiter of factual disputes. The trial court's findings of fact reflect that the trial court believed Miller's version of events. There was competent, credible evidence admitted below supporting the trial court's decision to issue a protection order as to Miller.
 {¶ 18} However, there was no mention at the hearing, or testimony relating to, Blake Mullins, Miller's boyfriend. The protection order also included Mullins, yet there was no evidence he was a family or household member. "Family or household member" includes a spouse, former spouse, person living as a spouse, parent, child, persons related by consanguinity or affinity, and certain relatives of these persons. R.C. 2903.21.4(A)(3) and R.C. 3113.31(B). Miller never testified that Mullins was "living as a spouse" or even mentioned Mullins at all during the hearing. No evidence was presented showing Mullins qualified as a family or household member. Therefore, the trial court erred by including Mullins in the order. Appellant's assignment of error is overruled in part and well-taken in part. The judgment of the Lake County Court of Common Pleas is affirmed as to Miller, but reversed with respect to the inclusion of Mullins.
JUDITH A. CHRISTLEY and WILLIAM M. O'NEILL, JJ., concur.