OPINION
{¶ 1} Joshua Rucker ("appellant") appeals the June 14, 2002 decision of the Portage County Common Pleas Court. In that decision, the trial court issued a civil protection order in favor of Caroline Paulus ("appellee"). For the following reasons, we reverse the decision of the trial court in this matter.
 {¶ 2} On April 19, 2002, appellee filed her petition for a stalking civil protection order against appellant pursuant to R.C. 2903.21.4. Following an ex parte hearing on April 22, 2002, the magistrate granted appellee's petition. Subsequently, a full hearing was conducted on May 1, 2002. As a result of the hearing, the magistrate granted a full stalking civil protection order against appellant for a period of five years. In granting the civil protection order, the magistrate found that "Joshua Rucker told several Metro Park employees that he felt Caroline Paulus should be shot. He also threatened to blow up buildings where she worked. He was angry with her for disciplinary action she had taken against him. This occurred during the space of a few weeks in April 2002." The trial court adopted the magistrate's decision on May 1, 2002. On June 14, 2002, the trial court overruled appellant's subsequent objections to the magistrate's decision. This timely appeal followed, and appellant asserts the following assignments of error for our review:
 {¶ 3} "[1.] The trial court erred by failing to rule on respondent's objections to the magistrate's decision.
 {¶ 4} "[2.] The trial court erred when it affirmed the magistrate's decision granting a stalking civil protective order to the petitioner, although such order was unsupported by the quantum of evidence required by law.
 {¶ 5} "[3.] The trial court erred in failing to address the magistrate's denial of respondent's motion to dismiss made at the conclusion of petitioner's case on grounds that there was a total lack of credible evidence to support the petitioner's stalking charge.
 {¶ 6} "[4.] The magistrate erred to the prejudice of the respondent when she denied the respondent's motion to strike the totally irrelevant and prejudicial testimony of the Chief of Rangers Douglas J. Shepard, a park hearing officer.
 {¶ 7} "[5.] The magistrate's finding that respondent's conduct was in violation of 2903.21.1 revised code was error, and not supported by the quantum of evidence required by law."
 {¶ 8} As appellant's second, third, and fifth assignments of error focus directly on the sufficiency of the evidence presented at the magistrate's hearing, we proceed to address them collectively.
 {¶ 9} In a civil proceeding, qualitative and quantitative distinctions between weight and sufficiency of the evidence are not recognized. State v. Hunter (2001), 144 Ohio App.3d 116, 121. Therefore, under the civil standard, "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court." C.E Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 10} R.C. 2903.21.4 provides for the issuance of civil protection orders for persons who are victims of menacing by stalking. Under 2903.21.4(C)(1), a petitioner must establish that the respondent engaged in conduct constituting menacing by stalking as defined by R.C. 2903.21.1. Thus, as the petitioner in this case, appellee had the burden of proving by a preponderance of the evidence, that respondent appellant engaged in a violation of R.C. 2903.21.1. Tuuri v. Snyder, 11th Dist. No. 2000-G-2325, 2002-Ohio-2107, 2002 Ohio App. LEXIS 2060; Lindsay v.Jackson (Sept. 8, 2000), 1st Dist. No. C-990786, 2000 Ohio App. LEXIS 4043.
 {¶ 11} R.C. 2903.21.1(A) states "no person by engaging in apattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." (Emphasis added.) "Pattern of conduct means two or more actions or incidents closely related in time, * * *." R.C. 2903.21.1(D)(1). A person acts "knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22. "Mental distress means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.21.1(D)(2).
 {¶ 12} The record indicates that appellant was an employee for the Metro Parks Park District, and that appellee was his direct supervisor from February 4, 2002 until appellant's resignation on April 19, 2002. At the magistrate's full hearing, appellee testified that on April 12, 2002, co-worker Terry Jo Levers informed her that appellant had made various threatening comments. Specifically, Levers told appellee that appellant's threatening comments consisted of the following: "I (appellee) was the reason innocent people go to jail, that I pissed him off, that somebody needed to be shot." Appellee testified that prior to making those comments, appellant had just been reprimanded by appellee for playing the radio too loudly while "sitting in his vehicle prior to the start of work time." The record indicates that prior to the April 12, 2002 incident, appellant was disciplined several other times by appellee for an attendance violation and for uttering an obscene word in front of a park patron.
 {¶ 13} When asked if appellant had ever personally communicated the comments relayed by Ms. Levers directly to her, appellee answered "No." Appellee also testified that Levers was her only "direct line of information", and that April 12, 2002, was the only time appellant's comments were ever brought to her attention. Appellee provided no further testimony as to other threats made against her, nor could she provide any instances where appellee directly threatened her or her family, or confronted her in any way. In fact, appellee's testimony indicates that aside from disciplining appellant in the normal course of her job, appellee had no additional contact with appellant, inside or outside of the workplace.
 {¶ 14} Appellant's co-worker Terry Jo Levers testified that in addition to the above-mentioned statements, appellant once talked about how he "wanted to blow up the volunteer center, blow up the field office, but he also wanted to make a nuclear bomb to blow up the visitor center." However, Ms. Levers testified that appellant had made those comments after being required to watch some "chain saw safety videos." Furthermore, when asked what precipitated the above comments, Ms. Levers testified, "Actually, I think it was just his aggravation at that time." Appellant thought "Carrie Paulus should have never had him watching a safety video because he already knew how to chain saw * * *." In addition to being unable to note the date and time of this occurrence, Ms. Levers was then asked if she reported the statement to anybody after hearing it. Ms. Levers' response was "No, I didn't."
 {¶ 15} Additionally, another co-worker, Rebecca Porath, was also a party to the "bomb discussion." Ms. Porath commented in her written statement "I heard Joshua Rucker say something in a joking manner about blowing up the nature center. * * *. It was all said in a somewhat joking way, * * *." The record indicates that Ms. Porath did not come forth with her written statement about the "bomb discussion" until the parks resource management specialist requested it two weeks after appellant allegedly made the statement.
 {¶ 16} The remaining statement in question came from the testimony of seasonal intern Leisa Guay. Ms. Guay testified that on April 12, 2002, she encountered appellant and Ms. Levers while on duty. While talking to appellant and Ms. Levers, Ms. Guay relayed a story about how appellee "likes to be told immediately about things that are going on." Ms. Guay also stated that she told the story "jokingly", about how she left a note for appellee first about a mysterious odor and then told appellant and Ms. Levers second, so as not to upset appellee. Further, Ms. Guay testified: "They both laughingly agreed." Appellant followed by saying "these people are all stupid around here * * * I wish we had the conceal law to carry in effect now. If we did, some of these people would have been blown away a long time ago." Ms. Guay testified that while she thought appellant's comments were "immature and inappropriate", she also concluded that appellant was "joking" and "laughing" when those comments were made. When asked if she had reported appellant's comments to appellee, Ms. Guay replied, "No, I did not." In fact, just as in the case of Ms. Porath, Ms. Guay only submitted a written statement to the park supervisors "the following week" after it was requested by management.
 {¶ 17} In concluding that appellant had engaged in menacing by stalking, the magistrate stated "I believe that Mr. Rucker made these comments knowing that these threats were going to be relayed to Mrs. Paulus and cause her fear. It might have been a joke to him, he might not have in his mind intended on carrying out these threats. I don't know what was going on in his mind, but I believe he intended on causing her fear * * *." As to the element of "knowingly", appellant made all of his comments outside the presence of his supervisor, while venting in the company of his co-workers.
 {¶ 18} The record is clear that appellant made no direct attempts to threaten, let alone communicate, with appellee in any way. Appellant never made any harassing phone calls, never sent any threatening mail or messages, and never parked out in front of appellee's driveway to deliver any type of threats. The magistrate cited no testimony in her decision showing how appellant knew that these comments would subsequently be communicated to appellee. In fact, Ms. Levers testified she never communicated the "bomb discussion" to appellee and Ms. Guay testified that she never communicated the "conceal to carry law" discussion to appellee. Appellee fails to provide any evidence showing how appellant knew the discussions between the co-workers would ever reach her.
 {¶ 19} Our review of the record indicates that appellee learned of only one incident regarding appellant's comments, and those comments were relayed to her by a third party, Ms. Levers. The testimony of Ms. Guay and Ms. Porath indicates that appellant apparently was "joking" with co-workers and made no efforts to ensure the transmission of those comments to appellee. Further, there is evidence that appellee was unaware of appellant's subsequent comments at the time she notified her supervisor. Based on the above, we conclude that appellant had no knowledge that his discussions with co-workers outside the presence of appellee would likely ever be communicated to appellee. While any such "joking" was inappropriate, under the circumstances shown by the evidence, it was not actionable. Thus, appellee has failed to satisfy the "knowingly" requirement of R.C. 2903.21.1 by a preponderance of the evidence.
 {¶ 20} The testimony indicates that appellant's comments made during the "nuclear bomb" and "conceal to carry law" discussions made no mention of appellee, and were never communicated to appellee. Again, such comments were inappropriate and should not be encouraged or condoned, but they were not actionable under the circumstances. In fact, it wasn't until weeks later, following appellee's managerial investigation, that any additional comments were revealed. As a result, this court is left with the "somebody needs to be shot" incident of April 12, 2002, reported by a third party to appellee. Even if appellant was referring to appellee (an inappropriate reference), that one incident, standing alone, is not enough to establish a pattern of behavior under R.C. 2903.21.1. State v.Scruggs (2000), 136 Ohio App.3d 631; Dayton v. Davis (1999),136 Ohio App.3d 26; Baddour v. Fox (Nov. 15, 2000), 5th Dist. No. 00CA00035, 2000 Ohio App. LEXIS 5307. Therefore, we reluctantly conclude that appellant did not engage in a pattern of behavior sufficient to satisfy the requirements of R.C. 2903.21.1.
 {¶ 21} As to the act of "causing another to believe that the offender will cause physical harm * * * or mental distress * * *." Appellant's discussion of the nuclear bomb and the "conceal to carry law" included no mention of appellee. Furthermore, the only testimony relative to appellee's fear of mental distress or fear of physical harm was the following:
 {¶ 22} "Q: Did those remarks as reported to you upset you or not?
 {¶ 23} "A: Yes, they did.
 {¶ 24} "Q: Were they something you took seriously or not?
 {¶ 25} "A: Absolutely."
 {¶ 26} A simple statement that a petitioner was upset is insufficient to meet the statutory standard of mental distress. Jackson, supra, syllabus. Appellee failed to provide any detailed evidence as to her belief that appellant intended to cause her mental distress or fear of physical harm. More importantly, this court can find no existing case law where menacing by stalking has been found to exist without some type of direct, face to face encounter between a petitioner and respondent. Appellee's attempt to direct this court to such cases is insufficient as those cases pertain to the aggravated menacing statute, not the menacing by stalking statute, and were decided years before the menacing by stalking statute came into effect. The record here fails to present any direct contact or encounter, such as mailings, phone calls, or harassing messages that would support menacing by stalking.
 {¶ 27} Based on the above, we conclude that appellee failed to establish through competent, credible evidence that appellant knowingly engaged in a pattern of behavior sufficient to support a finding of menacing by stalking. We hold that appellant's second, third, and fifth assignments of error are well taken and have merit. Our holding on the above assignments of error renders consideration of appellant's first and fourth assignments of error moot. App.R. 12(A)(1)(c).
 {¶ 28} The record before us indicates that there was some strain in the supervisor-employee relationship. Appellant made some improper and inappropriate comments to third persons. Appellant and appellee in this case never had any direct encounters or incidents. Civil protection orders are not to be used to alleviate uncomfortable work situations, they are to be used in preventing individuals from being harassed and protect them from mental distress and physical harm. Kramer v. Kramer, 3rd Dist. No. 13-02-03, 2002-Ohio-4383, 2002 Ohio App. LEXIS 4528. For the foregoing reasons, we hold that there was a lack of competent, credible evidence to support all the necessary elements of menacing by stalking as required by R.C. 2903.21.1. The decision of the trial court to issue a permanent civil protection order is reversed and judgment is hereby entered in favor of appellant.
WILLIAM M. O'NEILL, J., concurs,
JUDITH A. CHRISTLEY, J., concurs in judgment only with concurring opinion.