OPINION
{¶ 1} Defendant-appellant, Timothy Hangholt, appeals from a judgment of the Logan County Court of Common Pleas finding him to be a sexual predator. Hangholt asserts that the trial court erred in classifying him as a sexual predator when the psychological evaluation determined that his risk of recidivism for sexually oriented offenses is in the low to low-moderate range. While Hangholt's psychological evaluation is noteworthy, courts are not bound by the psychiatric findings and "likely to reoffend sexually" is not couched solely in terms of psychological test results. Reviewing the evidence in its entirely, we find these contentions to be meritless and, therefore, affirm the trial court's determination.
 {¶ 2} On August 13, 2002, a Logan County grand jury returned a fourteen count indictment against Hangholt, including six counts of rape of a person less than thirteen years of age in violation of R.C.2907.02(A)(1)(b), aggravated felonies in the first degree, four counts of forcible rape in violation of R.C. 2907.02(A)(2), aggravated felonies in the first degree, four counts of forcible gross sexual imposition in violation of R.C. 2907.02(A)(1), felonies in the fourth degree, and one count of gross sexual imposition of a person under the age of thirteen in violation of R.C. 2907.02(A)(4), a felony in the third degree. On December 30, 2002, Hangholt entered a guilty plea to two amended counts of sexual battery in violation of 2907.03(A)(5), felonies in the third degree. All other counts were dismissed.
 {¶ 3} On January 8, 2003, the state filed a motion to classify Hangholt as a sexual predator. A hearing on the matter took place on February 18, 2003, prior to sentencing. By entry dated February 25, 2003, the trial court found by clear and convincing evidence that Hangholt is likely to engage in future sexual oriented crimes and adjudicated him a sexual predator. The trial court also imposed a sentence of three years on each count of sexual battery to be served concurrently. This appeal followed, where Hangholt asserts the following sole assignment of error:
The trial court erred in applying the label of sexual predator to the Defendant-Appellant where the risk of recidivism for sexual oriented offenses was deemed, in a psychological evaluation, to be in the low to low moderate range.
 {¶ 4} Hangholt contends that the trial court erred in finding him a sexual predator because the psychological evaluation determined that he possessed a low to low-moderate risk of reoffending.
 {¶ 5} A "sexual predator" is defined by the Ohio Revised Code as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented crimes."[1] The crime of sexual battery is included in the definition of "sexually oriented offenses."[2]
 {¶ 6} In making a sexual predator determination, R.C. 2950.09(B)(3) states that the judge shall consider all relevant factors, including, but not limited to, all of the following:
(a) The offender's . . . age;
(b) The offender's . . . prior criminal . . . record regarding all offenses, including, but not limited to, all sexual offenses;
(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
(e) Whether the offender . . . used drugs or alcohol to impair the victim of sexually oriented offense or to prevent the victim from resisting;
(f) If the offender . . . previously has been convicted of or plead guilty to . . . a criminal offense, whether the offender . . . completed any sentence . . . imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender . . . participated in available programs for sexual offenders;
(g) Any mental illness or mental disability of the offender . . .;
(h) The nature of the offender's . . . sexual conduct, sexual contact, or interaction with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction were part of a demonstrative pattern of abuse;
(i) Whether the offender . . ., during the commission of the sexually oriented offense for which sentence is to be imposed . . ., displayed cruelty or made one or more threats of cruelty;
(j) Any additional behavioral characteristics that contribute to the offender's . . . conduct."
 {¶ 7} Rigid rules generally have no place in this determination. A court should apply the enumerated factors and consider the relevant application and persuasiveness of the individual circumstances on a case-by-case basis.[3]
 {¶ 8} R.C. 2950.09(B)(4) states that after reviewing all testimony, evidence, and the factors listed in R.C. 2950.09(B)(3), "the court shall determine by clear and convincing evidence whether the subject offender . . . is a sexual predator." The standard of clear and convincing evidence is defined as:
[T]hat measure or degree of proof which is more than a mere`preponderance of the evidence,' but not to the extent of such certaintyas is required `beyond a reasonable doubt' in criminal cases, and whichwill produce in the mind of the tier of facts a firm belief or convictionas to the facts sought to be established.[4]
 {¶ 9} In reviewing a trial court's decision founded upon this degree of proof, an appellate court must examine the record to determine whether the evidence satisfies the clear and convincing standard.[5]
 {¶ 10} Hangholt asserts that trial court erred in finding by clear and convincing evidence that he is likely to commit another sexually oriented offense. Hangholt bases his assertion solely upon a psychological evaluation that determined he posed a low to low-moderate risk of recidivism.
 {¶ 11} "Instead of deciding whether the offender is particularly deserving of punishment, the issue presented to the court at a sexual offender classification hearing is whether the defendant is likely to commit future sexual oriented offenses."[6] In making this determination, no single factor is controlling, rather the determination is based upon the application and examination of statutory factors and consideration of relevant circumstances and evidence on a case-by-case basis.[7]
 {¶ 12} The underlying facts of the incident at issue are as follows. On May 4, 2002, two female victims, ages seventeen and fourteen, along with their mother, contacted the Sheriff's office to report the sexual misconduct of Hangholt, their step-father.
 {¶ 13} The first victim stated that Hangholt first approached her when she was twelve. He approached her when her mother was not home, resulting in a forcible sexual touching that lasted approximately five minutes. After the initial incident, Hangholt had no sexual contact with the first victim for almost a year. The sexual contact resumed when the first victim was thirteen, and for the next three years Hangholt continued to sexually abuse the first victim between one and five times per week. The second victim was nine when the first acts of sexual misconduct were committed. The misconduct occurred at least once a week and continued for the next five years.
 {¶ 14} The abuse consisted of Hangholt entering the victims' bedrooms in the early morning, between 4:30 a.m. and 5 a.m., while their mother was still asleep. Each victim would often wake up to Hangholt touching them inappropriately.
 {¶ 15} The victim's mother stated that Hangholt admitted he had sexually abused the victims. Further, Hangholt initially told the police that he touched the victim's inappropriately. He also stated that he felt provoked by the victims, as they walked around the house half dressed and enticed him into bed in the early morning. In a later interview with the psychological evaluator, Hangholt denied ever touching the victims and stated it would be wrong to do so.
 {¶ 10} The psychological evaluation was conducted by Dr. Kim Stookey. In addition to an interview, Dr. Stookey administered the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"). The MMPI-2 indicated Hangholt had a problem with impulsivity, an inability to delay gratification of impulses, and had little respect for social standards. The results of Hangholt's MMPI-2 indicated he would have poor prognosis for success in treatment. The evaluation categorized Hangholt as an Incest type of offender. While Incest type offenders, as a general class, have a low recidivism rate, between seven and ten percent, several other factors were considered in Hangholt's evaluation. The chronic nature of the abuse, Hangholt's willingness to use force, his impulsivity, as well as lack of stable employment history were all factors likely to increase his risk of recidivism. As a result of the additional factors, the evaluation raised Hangholt's risk level to the low-moderate range.
 {¶ 11} The Presentencing Investigation Report ("PSI") concluded that Hangholt was likely to reoffend. The PSI included a synopsis of the above factual account, along with a summary of the psychological evaluation. Ultimately, the PSI concluded that Hangholt was likely to reoffend based upon his lack of remorse for the offenses.
 {¶ 12} At the sexual predator hearing, the psychological evaluation and the PSI were both admitted into evidence with no objection. The state also called the victims' mother and a friend of the second victim. The victims' mother testified that one of the victims had been sexually abused by another person prior to her marriage to Hangholt. As a result, the victim suffered severe psychological trauma. In addition, Hangholt was aware of this victim's prior abuse, as well as her psychological trauma. The friend of the second victim identified Hangholt in the courtroom and testified that he had attempted to have sexual contact with her once while she was watching television at the Hangholt home.
 {¶ 13} In reviewing the circumstances of the underlying crime and applying the factors contained in R.C. 2950.09(B)(3), the trial court found that while the reported base rate for reoffense was only between seven and ten percent, there were other factors contributing to Hangholt's likelihood of reoffending. Although Hangholt asserts that the court should have relied solely on the psychological evaluation that he posed only a low to low-moderate risk of reoffending, the record demonstrates the court properly considered the entirety of evidence presented and requisite standard of proof.
 {¶ 14} The court acknowledged several factors that decreased the likelihood of reoffending, including Hangholt's lack of any prior record, the lack of evidence of mental illness or disability, and that no drugs or alcohol were used to impair the victims. However, the court also acknowledged that the following factors were likely to increase Hangholt's likelihood to reoffend: the tender age of the victims, nine and twelve; the fact that the ages indicated a large victim pool; Hangholt's lack of remorse, specifically his blaming the victims and his denial that the offenses occurred; his poor prognosis for successful treatment; the chronic pattern of the conduct and Hangholt's tendency to use force; and, Hangholt's impulsive nature and lack of stable employment.
 {¶ 15} Hangholt contends that the court erred in finding by clear and convincing evidence that he is likely to reoffend, because the psychological evaluation weighs against such a finding. As set forth inState v. Robertson, a psychological evaluation is not determinative and must be considered in light all evidence presented.[8] Here the court considered the report in light of all other evidence presented. Based upon the entirety of the evidence and the court's consideration of the statutory factors, we find sufficient evidence was presented to show by clear and convincing evidence that appellant is a sexual predator.
 {¶ 16} Finally, based upon the Ohio Supreme Court's civil characterization of sexual predator proceedings in State v. Cook,[9]
the question of whether manifest weight and sufficiency of the evidence claims should be addressed under the civil standard set forth in C.E.Morris Co. v. Foley Construction Co.,[10] or the criminal standard enumerated in State v. Thompkins,[11] has become an issue which has not been uniformly resolved among Ohio's appellate districts. However, even the more stringent criminal standard requires a finding that "the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the proceeding must be reversed" to overturn such a determination.[12] Furthermore, the statutory scheme of R.C. Chapter 2950 provides the trial court with significant discretion in evaluating factors that may be relevant to its recidivism determination, and theCook decision illustrates that these determinations are to be afforded considerable deference.[13]
 {¶ 17} Our review of the record persuades us that, regardless of the standard applied, there was sufficient evidence upon which the court could have found that Hangholt was likely to commit another sexually oriented offense in the future by clear and convincing evidence. The trial court set forth the statutory factors it found probative for its determination, providing a clear and accurate record of what testimony and evidence were presented and the manner in which they were considered. Weighing the evidence, the credibility of witnesses, and all reasonable inferences, we cannot say that the trier of fact clearly lost its way or created such a manifest miscarriage of justice that the proceeding must be reversed. Accordingly, appellant's assignment of error must be overruled.
 {¶ 18} Having found no error prejudicial to the appellant herein, we affirm the judgment of the trial court.
Judgment affirmed.
BRYANT, P.J. and CUPP, J., concur.
[1] R.C. 2950.01(E).
[2] R.C. 2950.01(D)(1).
[3] State v. Dennis, 3rd Dist. No. 8-2000-08, 2000-Ohio-1853; State v.Dewitt, 3rd Dist. No. 14-2000-21, 2000-Ohio-1696.
[4] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, citing Cross v. Ledford (1954), 161 Ohio St. 469, 53 O.O. 361,120 N.E.2d 118.
[5] Schiebel, supra, at 54.
[6] State v. Eppinger (2001), 91 Ohio St.3d 158, 166,743 N.E.2d 881.
[7] State v. Robertson, 147 Ohio App.3d 94, 102, 2002-Ohio-494, at ¶ 39, 768 N.E.2d 1207.
[8] Robertson, 147 Ohio App.3d at 102.
[9] State v. Cook (1998), 83 Ohio St.3d 404, 425, 700 N.E.2d 570.
[10] C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578. See State v. Hunter (2001), 144 Ohio App.3d 116, 121,759 N.E.2d 809; State v. Morris (July 18, 2000), 4th Dist. No. 99 CA 47, unreported; State v. Mc Henry, 5th Dist. No. 2001CA00062,2001-Ohio-1674; State v. Parsons (Aug. 17, 2001), 6th Dist. No. H-00-042, unreported.
[11] State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. See, State v. Bolin (June 15, 2001), 2nd Dist. No. 18605, unreported;State v. Turner, 3rd Dist. No. 5-01-27, 2001-Ohio-2292; State v. Sims, Jefferson App. Nos. 99-JE-43, 99-JE-57, 2001-Ohio-3316; State v. Pryce
(June 28, 2000), 9th Dist. No. 19888, unreported; State v. Morrison
(Sept. 20, 2001), 10th Dist. No. 01AP-66, unreported; State v. Dama, 11th Dist. No. 2000-T-0086, 2001-Ohio-8811; State v. Benson (Aug. 28, 2000), 12th Dist. No. CA99-11-194, unreported.
[12] Thompkins, 78 Ohio St.3d at 387.
[13] Cook, 83 Ohio St.3d at 426.