DECISION. *Page 2 
{¶ 1} Defendant-appellant James Jackson pleaded guilty to kidnapping,[1] felonious assault,[2] and rape.[3] Using a malicious array of weaponry — including a gun, a knife, an ice pick, cooking grease, and a broomstick — and in manner redolent of the most barbarous of miscreants, Jackson had threatened, forcibly detained, beaten, and mercilessly raped his victim. Jackson then basely paraded her before others as though she were a "gorilla on display," according to the victim-impact statement.
 {¶ 2} The trial court sentenced Jackson to concurrent terms of five years' incarceration on each charge, for an aggregate term of five years. The trial court then classified him as a sexual predator. Jackson appeals only from the sexual-predator classification. We affirm.
 I. A Despicable Display of Inhumanity {¶ 3} The victim in her impact statement attested that, in October of 2006, Jackson and a crony had knocked on her door; that she had opened the door; that Jackson and his accomplice had then barged into her apartment and beaten her with a gun and a stick. "Bitch, take off your clothes," demanded the duo as they ensured her compliance with the aid of a firearm. The victim was then hogtied and anally and vaginally violated with a broomstick. "It scratched and tore me," recounted the victim, who added that they "stabbed me on both sides of my body, from the back of my knees to my hips, and Jackson beat me with a gun and hit me in the head." Death threats ensued. *Page 3 
 {¶ 4} "Bitch, you are going to die in an hour," threatened the twosome after having kicked the victim in the face. A third accomplice arrived, and the victim pleaded for help; it was to no avail. Her cries for help prompted the newcomer to retort, "Bitch, will you just shut up!"
 {¶ 5} Bullets were then lined up and calculatedly placed in the chamber of a gun. The victim was again beaten until she was numb. And later three or four outsiders were brought in to observe the violent offenses that had been perpetrated against the victim; apparently unable to perceive what transgression had prompted such vile treatment the onlookers asked, "What happened, what did she do?" Detective Dionne Winfrey explained that the victim had been made an example of, and that the threesome were drug dealers. Apparently the dealers' merchandise had been looted. The dealers decided that they would send a warning to those who would attempt to steal drugs from them in the future by abusing the victim and then displaying her for other would-be pilferers to see.
 {¶ 6} While she was bound and held "captive, the [dealers] sold drugs out of my house," recalled the victim. "Then I heard the police at the door and [one of the assailants] opened [the door], and I remember six deputies rushing in and hearing the officers yell `Hamilton County Sheriffs Department!'"
 {¶ 7} The victim was taken to the hospital — embarrassed because she was naked, but ecstatic to have lived through the assault. She was then placed in a women's shelter for protection. She eventually began to visit a therapist, but she abruptly ceased those visits when Jackson's friends and family began to show up in an attempt to coerce her to drop the charges and to refuse to testify. The victim also stated that she continued to be paranoid and scared for her life — seemingly with good reason. *Page 4 
 II. Sex-Predator Classification {¶ 8} The Ohio Supreme court has instructed us to review a trial court's determination in a sex-offender-classification hearing under a civil manifest-weight-of-the-evidence standard,[4] under which the determination may not be disturbed if the trial court's findings are supported by some competent, credible evidence. (Though that court failed to consider how that standard relates to the "clear and convincing evidence" standard for sexual-predator hearings.)
 {¶ 9} A sexual predator is a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to commit in the future one or more sexually oriented offenses.[5]
Jackson pleaded guilty to rape; thus, the sole question remaining to be answered is whether he is likely to recidivate.
 {¶ 10} In determining whether an offender is likely to commit a future sex offense, courts are guided by the former R.C. 2950.09(B)(3) factors (R.C. 2950.09 was repealed effective January 1, 2008), and these factors must be proved by the state by clear and convincing evidence.[6] These factors include the following:
 • the offender's age and prior criminal record;
 • the victim's age;
 • whether the sex offense involved multiple victims;
 • whether the offender used drugs or alcohol to impair the victim;
 • if the offender has previously been convicted of any criminal offense;
 • whether the offender completed a sentence for any conviction, and if a prior conviction was for a sex offense, whether the offender participated in any available program for sex offenders;
 • whether the offender demonstrated a pattern of abuse or displayed cruelty toward the victim; *Page 5 
 • any mental disease or disability of the offender; and
 • any other behavioral characteristics that contributed to the sex offender's conduct.[7]
 III. R.C. 2950.09(B)(3) Requires No Sexual Animus {¶ 11} The basis of Jackson's argument against his classification as a sexual predator is that there was no sexual motivation for his offense, and that this was his first sexual offense; the underlying facts, he argues, indicate that he had committed the offenses out of retaliation because he wanted to make an example of the victim, and that the offenses were not inspired by sexual motivation and were not for sexual gratification. Jackson's logic is flawed. In enacting R.C. 2950.09(B)(3), the legislature propounded a nonexhaustive list of multiple nonsexual factors that are informative of whether a sexual offender is likely to reoffend.
 {¶ 12} Though there must be a predicate offense that is classified as a sexual offense, there is no further need to show a sexual animus to commit a sexual offense. Rape is rape regardless of its purpose. We hold that a sexual animus for the underlying sexual offense is not required to show that the offender is likely to recidivate. If this is what Jackson did to "make an example" of someone, why would he not do so again?
 {¶ 13} We begin our analysis by noting that Jackson waived a court-clinic examination, which would have provided a professional assessment of his likelihood to reoffend. Consequently, Jackson agreed that the court could make its determination based on the facts of the offense and the information available to the court in the *Page 6 
presentence-investigation report and the victim-impact statement. We now analyze Jackson's likelihood of reoffending based on the information provided to the trial court.
 {¶ 14} We first note that many of the R.C. 2950.09(B)(3) factors do not touch on the offender's motivation for committing the underlying offense. The court considers, without regard to the offense under review, the offender's age, prior criminal record, mental illness or disabilities, and prior convictions or guilty pleas to any criminal offenses.[8] Thus, almost half of the R.C. 2950.09(B)(3) factors pay no heed to the underlying offense. Also, R.C. 2950.09(B)(3)(j) gives the trial court additional latitude to consider any and all relevant factors in making its sexual-predator determination, notwithstanding the factors listed in R.C. 2950.09(B)(3)(a) through (k).[9]
 {¶ 15} Jackson's criminal record in terms of charges is extensive.[10] Many of the charges were dismissed, but his convictions — though nonsexual in nature — signify a predisposition for recidivism: Jackson had been convicted of multiple counts of carrying a concealed weapon; multiple counts of possessing weapons under a disability; receiving stolen property; multiple counts of obstructing official business; spitting on a public sidewalk; driving without a license; presenting a false name to a police officer; multiple drug-related misdemeanors, including possession, abuse, and preparation of drugs for sale; and falsification. As a juvenile, Jackson had been adjudicated delinquent for drug abuse, robbery, a curfew violation, and making or selling a counterfeit controlled substance; and he had violated parole and probation. For these offenses, Jackson had been sentenced to over six years' incarceration in the aggregate. Jackson's criminal *Page 7 
record, including the terms of incarceration served for his offenses, indicates a likelihood of recidivism in the future.
 {¶ 16} We further note the violent nature of the offense and the display of cruelty towards the victim points to recidivism.[11]
Jackson and an accomplice kidnapped the victim, bound her, and abhorrently raped her with a broomstick. They then stabbed her with an object resembling an ice pick, kicked and punched her in the face and over her entire body, and later threatened to kill her. "It was a deplorable act that they committed against the victim," said the court during sentencing. The court also noted (1) the extent of the victim's post-offense psychological issues for which she had sought treatment at a rape crisis and abuse center; (2) that the victim, for her well-being, had moved to a new part of town; and that (3) the photographs of her body, taken after the offenses had been committed, depicted an individual that had been brutalized and battered. The sadistic nature of the offense and the absolute manifestation of cruelty also weigh heavily in favor of recidivism.[12]
 {¶ 17} We are convinced that the state proved by clear and convincing evidence that Jackson was likely to reoffend. The touchstone of the likelihood of recidivism under R.C. 2950.09 is not that there was a sexual animus for the underlying sexual offense. Rather, the legislature set forth numerous nonsexual criteria that are relevant to the recidivism inquiry. As we have noted, the legislature has recommended that even nonsexual prior offenses, pleas, convictions, and terms of incarceration are informative of whether an offender is a sexual predator.[13] The legislature has also suggested that an offender's display of cruelty toward his victim is telling.[14] The trial court may exercise its *Page 8 
broad discretion in deciding how much weight, if any, to give to each of the factors.[15] And the court may classify an offender as a sexual predator "even if only one or two statutory factors are present," if in its consideration of the relevant factors the totality of the circumstances clearly and convincingly indicate a likelihood of recidivism.[16]
 {¶ 18} Because the state proved by clear and convincing evidence that Jackson was likely to reoffend in the future, the trial court's classification of Jackson as a sexual predator is affirmed.
Judgment affirmed.
HILDEBRANDT, P.J., and DINKELACKER, J., concur.
[1] R.C. 2905.01(A)(2).
[2] R.C. 2903.11(A)(2).
[3] R.C. 2907.02(A)(2).
[4] State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202,865 N.E.2d 1264; State v. Hunter (2001), 144 Ohio App.3d 116, 759 N.E.2d 809,813.
[5] R.C. 2950.01(E).
[6] Wilson at ¶ 20; R.C. 2950.09(B)(4).
[7] R.C. 2950.09(B)(3)(a) through (j); see, also, State v. Marks, 8th Dist. No. 89813, 2008-Ohio-1705, at ¶ 7.
[8] R.C. 2950.09(B)(3)(a), 2950.09(B)(3)(b), 2950.09(B)(3)(f), and2950.09(B)(3)(g).
[9] See State v. Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247,743 N.E.2d 881.
[10] See R.C. 2950.09(B)(3)(b) and R.C. 2950.09(B)(3)(f).
[11] See R.C. 2950.09(B)(3)(i).
[12] See, e.g., State v. Owen (June 19, 1998), 1st
Dist. No. C-970676.
[13] See, e.g., R.C. 2950.09.
[14] R.C. 2950.09(B)(3)(i).
[15] State v. Thompson, 92 Ohio St.3d 584, 2001-Ohio-1288,752 N.E.2d 276, paragraph one of the syllabus; State v. Nyel, 1st
Dist. No. C-020640, 2003-Ohio-4961, at ¶ 20.
[16] State v. Randall (2001), 141 Ohio App.3d 160, 750 N.E.2d 615;State v. Mollohan (Aug. 19, 1999), 4th Dist. No. 98 CA 13. *Page 1