[Cite as *State v. Ridder*, 2016-Ohio-5195.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150460 |
| | | TRIAL NO. B-1306452 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| SAMUEL RIDDER, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 3, 2016


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

**MOCK, Judge.**

{¶1} Defendant-appellant Samuel Ridder moved in with S.W.'s mother shortly after S.W. was born. For the first few years, the three lived in Kentucky with S.W.'s older brother. Shortly after S.W.'s mother gave birth to another child, the family moved to Delhi. According to testimony by S.W. at trial, Ridder, on several occasions, both in her bedroom and his bedroom, had placed his fingers in her vagina and her anus, licked her privates, made her rub his penis with her hand, and put his penis in her mouth. S.W.'s mother had been unaware of Ridder's conduct at the time of the incidents, which had occurred when S.W. was between four and five years old.

{¶2} After a domestic-violence incident, S.W.'s mother took the children and left the home. After staying briefly with S.W.'s maternal grandfather, S.W.'s mother took the children with her to stay in a domestic-violence shelter in Circleville, Ohio. After staying at the shelter for a few weeks, S.W. disclosed the incidents to her mother. Her mother took S.W. to the Center for Family Safety and Healing at the Nationwide Children's Hospital in Columbus ("Center"). The Center operates under the same guidelines and protocols as the Mayerson Center for Safe and Healthy Children at the Cincinnati Children's Hospital Medical Center ("Mayerson Center"). S.W. was interviewed by Jennifer Westgate, a licensed social worker. After the interview, during which she disclosed some of the conduct and indicated that it had happened "in Kentucky," S.W. was examined and treated by physicians with the hospital. Additionally, staff members from the Center contacted the Delhi Police Department.

{¶3} Detective Joe Macaluso contacted Ridder and asked him to appear for an interview. In the interview, Ridder denied the allegations. After concluding the

2

interview, Macaluso released Ridder, but told him that he would likely need to be seen again. Because Macaluso had surgery during that time, several months passed before he could contact Ridder. After a couple of failed attempts to coordinate their schedules, Ridder refused to further cooperate with the police. He was later arrested and indicted on four counts of rape, in violation of R.C. 2907.02(A)(1)(b). The first two rape counts alleged digital penetration of the vaginal or anal cavity, the third rape count alleged that he had engaged in cunnilingus with S.W., and the fourth count alleged that he had compelled S.W. to engage in fellatio. He was also charged with one count of gross sexual imposition ("GSI"), in violation of R.C. 2907.05(A)(4), for forcing S.W. to touch his penis with her hand.

{¶4} At trial, Ridder's trial counsel pursued two separate theories of the case. Counsel's first theory was that her mother had coached S.W. to make the allegations in order to secure the family's stay at a domestic-violence shelter in Circleville. Counsel's second approach to the case involved convincing the jury that the incidents occurred in Kentucky, based on what S.W. had said in her interview with Westgate.

{¶5} Ridder was found guilty of all charges. The trial court sentenced Ridder to life in prison without parole for each of the rape convictions, and to 18 months in prison for the GSI. Neither the transcript of the proceedings nor the sentencing entry explicitly states whether the life sentences were to be served consecutively or concurrently.

### The Admission of S.W.'s Interview Was Not Plain Error

{¶6} In his first assignment of error, Ridder claims that the trial court erred by allowing the state to play the video recording of S.W.'s interview with Westgate to the

3

jury, and by admitting that recording into evidence. Ridder concedes, however, that he did not object, so he has waived all but plain error. Reversal for plain error is warranted only if the outcome "clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Given our review of the record, we find no plain error.

{¶7} Evid.R. 803(4) provides an exception to the hearsay rule for "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This court has previously held that similar statements made by a child victim to a social worker at the Mayerson Center were admissible under Evid.R. 803(4). *See State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 4-12 (1st Dist.); *State v. Bowers*, 1st Dist. Hamilton No. C-150024, 2016-Ohio-904, ¶ 20-24.

{¶8} In determining whether a child's statements were made for the purpose of medical diagnosis or treatment, the *Lukacs* court noted that the inquiry "depends upon the facts of the particular case" and the factors to be examined include (1) the nature of the questioning—whether the interviewer asked leading or suggestive questions; (2) whether the child had a reason to lie; (3) whether the child understood the need to tell the truth; (4) the age of the child at the time the statements were made; and (5) whether the child's statements were consistent. *Lukacs* at ¶ 7.

{¶9} Our application of the facts in this case to the considerations set forth in *Lukacs* cause us to conclude that the statements were made for the purpose of medical diagnosis or treatment. Westgate did not ask leading or suggestive questions, S.W. had no reason to lie, Westgate impressed upon her the need to tell the truth, her responses

were age-appropriate, and they were consistent. Additionally, as the trial court noted at sentencing, the level of detail S.W. volunteered about the experiences—how things looked, felt, and tasted for example—were wholly inconsistent with either fabrication or coaching. Therefore, the interview was admissible pursuant to Evid.R. 803(4). We overrule Ridder's first assignment of error.

**Prosecutorial Misconduct**

{¶10} In his second assignment of error, Robinson claims that the trial prosecutor engaged in misconduct through both a series of leading questions and a series of comments made during closing argument. Again, counsel failed to object to any of the cited instances. Of the five page citations listed by Ridder that he claims contained leading questions, none of them were related to key testimony about the incidents referenced in the indictment. These five, isolated instances—in a trial that lasted several days and from a transcript that contained over 1200 pages—did not affect the outcome of the trial, and therefore, do not constitute plain error.

{¶11} As for the comments made during closing argument, none of them were improper. The test for prosecutorial misconduct in closing argument is whether the comments were improper and prejudicial to the accused's substantial rights. *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 44, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). In determining whether a prosecutor's remarks during closing argument were prejudicial, we must consider "the effect the misconduct had on the jury in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).

{¶12} In this case, the statements made by the prosecutor were fair comments on the evidence and argument of defense counsel. They did not so adversely affect the jury, within the context of the entire trial, that Ridder can now show prejudice. Pointing

out the weaknesses of defense counsel's closing argument, pointing to claims or arguments that are disingenuous or not supported by the evidence, or highlighting a defendant's conduct that evinces guilt are not improper.

{¶13} Finding no prosecutorial misconduct, we overrule Ridder's second assignment of error.

### Ineffective Assistance of Counsel

{¶14} In his third assignment of error, Ridder claims that his trial counsel was ineffective for failing to make a Crim.R. 29 motion for an acquittal at the close of the state's case, failing to object to the admission of the video recording of the interview between S.W. and Westgate, and failing to object to the questions and statements that formed the basis for his claims of prosecutorial misconduct. Ridder has failed to demonstrate that counsel was ineffective in these areas.

{¶15} To prove ineffective assistance of counsel, a defendant generally has to demonstrate that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Prejudice results when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bradley* at 142.

{¶16} Ridder first argues that it was ineffective for trial counsel to fail to make a Crim.R. 29 motion at the close of the state's case. But it is not ineffective assistance to fail to file a motion that would not have been successful. *See State v. Hill*, 75 Ohio St.3d 195, 211, 661 N.E.2d 1068 (1996). S.W.'s testimony alone was sufficient to meet the state's burden on all the charges listed in the indictment. Therefore, had counsel made a Crim.R. 29 motion, it would not have succeeded.

{¶17}   Ridder next argues that it was ineffective for trial counsel to fail to object to the admission of the video of the interview of S.W. by Westgate.  But the video was crucial to defense counsel's trial strategy.  First, counsel sought to convince the jury that the events S.W. described occurred in Kentucky, not Ohio.  In closing, he said that "if you believe the recording, no conviction."  He then went on to say that, if they doubted the statement that she made that the events occurred in Kentucky, "you're doubting the key evidence."  Without the video, counsel would not have been able to make the argument, because no other admitted evidence placed the events in Kentucky.

{¶18}   Additionally, counsel argued that S.W.'s mother had coached her in order to stay in the domestic-violence shelter in Circleville.  The only evidence of coaching that counsel was able to develop came from the phrasing of a couple of S.W.'s statements in the recording, and he referred to it repeatedly during his closing argument.  Without the recording, counsel would not have had any direct evidence of coaching.

{¶19}   While these two strategies ultimately proved unsuccessful, that does not mean that they were not sound trial strategies based on the case counsel had to defend.  Even "debatable" trial tactics do not establish ineffective assistance of counsel.  *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 146.  And trial counsel's strategy was far from debatable, being likely his best argument for acquittal based on the evidence presented by the state.

{¶20}   Finally, Ridder argues that it was ineffective for trial counsel to fail to object to the statements and comments made by the prosecutor.  But none of the statements were improper.  And merely failing to object to a few leading questions is not ineffective assistance.  There is value, from a trial-strategy perspective, to not objecting to every de minimis violation during the course of a trial.  *See State v. Conway*, 108 Ohio

7

St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 168; *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). The fact-finder may perceive objections to be disruptive and annoying, and an objection may draw unwanted attention to an issue that might pass without the jury's notice absent the objection. *See State v. Campbell*, 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994); *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 90. As a result, "competent counsel may reasonably hesitate to object in the jury's presence." *Campbell* at 53.

{¶21} This reasoning goes for objections during closing arguments as well. A reasonable attorney may decide not to interrupt his opponent's closing argument. *State v. Campbell*, 90 Ohio St.3d 320, 339, 738 N.E.2d 1178 (2000). In addition, Ridder has failed to demonstrate that, but for these comments and the leading questions, the outcome would have been different. *See Bradley* at 142.

{¶22} Since Ridder has failed to show that a Crim.R. 29 motion would have succeeded, that the admission of the video recording and the failure to object to the prosecutor's questions or comments was not sound trial strategy, or that the outcome of his trial would have been different in any event, he has failed to establish that his counsel was ineffective. We overrule his third assignment of error.

### Sufficiency/Weight

{¶23} Ridder's fourth assignment of error is that his convictions were based on insufficient evidence and against the manifest weight of the evidence. When an appellant challenges the sufficiency of the evidence, we must determine whether the state presented adequate evidence on each element of the offense. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine

8

whether the jury clearly lost its way and created a manifest miscarriage of justice. *Id.* at 387.

{¶24} S.W.'s testimony was enough to establish the elements of all four rape counts and the GSI count. She testified that it hurt when he put his finger in her, that he would "wiggle" his finger when it was inside her, and that she knew that he had put his finger inside her because he had "opened" her and she could feel it. She described his penis as a "fat noodle" with a hole at the end, and said that he would "wiggle" it when he put it in her mouth. She said that it tasted "nasty" and that she would gargle with water afterward to get rid of the taste. As the trial court noted, her testimony went far beyond what a then seven-year-old girl would have been able to discuss—even with "coaching."

{¶25} And, while S.W. said that the events occurred in Kentucky when interviewed by Westgate, at trial the state was careful to ask her only about things that happened in the Delhi home. And, based on the testimony about where the family had lived on different dates, it was clear that the events that S.W. described had occurred in Hamilton County, Ohio. The fact that S.W.'s mother was addicted to and actively using heroin, cocaine, and prescription pain pills, and was a chronic liar does not change this. And while Ridder points to the fact that there was no physical evidence to establish the claims, both a doctor from the Mayerson Center and Detective Macaluso testified that the lack of physical evidence is actually common in this type of case.

{¶26} The state presented sufficient evidence to prove that, on at least two occasions, Ridder had digitally penetrated S.W.'s vagina or anus, forced S.W. to perform fellatio on him, engaged in cunnilingus with S.W., and forced S.W. to grab his penis with her hand. This was sufficient to establish the four counts of rape and one count of GSI of

which he was found guilty. And those guilty findings were not against the manifest weight of the evidence. We overrule Ridder's fourth assignment of error.

### Ridder was Properly Sentenced to Life
### Without Parole

{¶27} Finally, Ridder argues that the trial court imposed "excessive consecutive prison terms without make the requisite Ohio statutory sentencing findings." We disagree.

{¶28} Ridder first argues that the trial court imposed the maximum sentences on each count without properly considering the purposes and principles of sentencing or any of the factors set forth in R.C. 2929.11(B) and 2929.12(A)-(E). This court will only modify or vacate a sentence if it clearly and convincingly finds that either the record does not support the mandatory sentencing findings or the sentence is otherwise contrary to law. *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶29} The court was not required to make findings or to give reasons for imposing the maximum term of confinement. *See White* at ¶ 8 (noting that 2011 Am.Sub.H.B. No. 86, Section 2 repealed statutory provisions requiring findings for maximum sentences). Nor was the court required to make findings concerning the R.C. 2929.11 felony-sentencing purposes and principles or the 2929.12 seriousness-and-recidivism factors. *See State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 17. And in the absence of an affirmative demonstration by Ridder to the contrary, we may presume that the court considered those objectives and factors. *See id.* at fn. 4; *State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 51.

{¶30} Ridder next argues that the trial court did not comply with R.C. 2929.14(C)(4) when imposing consecutive sentences. But the trial court did not order

10

the sentences to be served consecutively—either during the sentencing hearing or in the sentencing entry. In fact, the trial court was silent in both places on the issue of whether the terms were to be served consecutively or concurrently. When a court's entry is silent as to whether a consecutive or concurrent term applies, the sentences are to be served concurrently. *See* R.C. 2929.41(A).

{¶31} As Ridder has demonstrated no error in the imposition of the sentences he received in this matter, we overrule his fifth assignment of error.

### Conclusion

{¶32} Having considered and overruled all five of Ridder's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **DEWINE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.