[Cite as *State v. Williams*, 2017-Ohio-8898.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160336 |
| | | TRIAL NO. B-1501161 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| CHRIS WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 8, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna*, for Defendant-Appellant.

**MOCK, Presiding Judge.**

{¶1} Defendant-appellant Chris Williams was convicted of raping two minors under the age of ten. He was sentenced to life in prison on each count, with the sentences to be served consecutively. Williams now appeals, raising nine assignments of error.

### Children's Disclosure of Abuse by Williams
### Results in Convictions

{¶2} The victims' mother was in a relationship with Williams over a period of several years until Williams left to live with his mother and the victims' mother went to live with her parents. The couple had three children, N.W., M.W., and a third child not at issue in this case. While Williams had no custody rights to the children, had not established his paternity, and had not provided consistent support, he did not deny that the children were his. The children would occasionally have overnight visits with Williams at his mother's home.

{¶3} N.W. and M.W. separately informed their mother that Williams had touched them inappropriately. M.W. told her mother that Williams had touched her "on her butt." When her mother asked her to point to where he had touched her, M.W. pointed to her vagina. She said he touched her underneath her panties while Williams and her sisters had been in bed together sleeping. M.W.'s mother did not report this incident to anyone else. Six months later, N.W. reported that Williams had done the same thing to her. At that point, the girls' mother contacted the Cincinnati Police Department.

{¶4} The mother took the girls to the Mayerson Center to be interviewed "so they could advise me on what treatment the girls need." Both reported that Williams had digitally penetrated their vaginas.

{¶5}    During the course of their investigation, detectives interviewed Williams.  Williams denied any inappropriate behavior.  Williams admitted that he would sometimes "examine" the girls' private areas to determine if they had been abused by others.  He would have the girls remove their clothing and spread their legs so he could examine them.  He told the detectives that he did this under the supervision of his mother.  When the interview concluded, but while Williams was still in the police station, one of the detectives called Williams's mother.  She denied anything like that had occurred, and she said that she would have called the girls' mother if it had.  Williams's mother called back 45 minutes later and contradicted her prior statements, telling the detective that such examinations had occurred under her supervision.

{¶6}    At trial, the girls' mother, N.W., M.W., the Mayerson social worker, and a Cincinnati Police detective who investigated the case testified.  M.W., who was nine years old when she testified, said that Williams had touched her in her "bad spot" with his finger on more than one occasion, but claimed not to remember the details such as whether Williams's finger penetrated her vagina.  N.W., who was ten years old when she testified, said that Williams had inserted his finger into her vagina.  She said that she told M.W. what happened, and that M.W. had confided that it had happened to her as well and told her that she should tell their mother. The social worker from the Mayerson Center testified that both girls had reported to her that Williams had digitally penetrated them.

{¶7}    Williams testified at trial and maintained that he had not touched his daughters inappropriately and that they were not telling the truth.  He testified that he did not sleep in the same bed as the girls when they spent the night.  Williams's cousin and girlfriend also testified to the sleeping arrangements.   His mother testified about the sleeping arrangements, and also testified about the examinations

that Williams said he performed. She claimed that she had been sick and was sleeping when the detective initially called, and did not understand what the detective was asking about. She said that when she woke up and thought about it, she called the detective back to correct her misstatements.

{¶8} The jury found Williams guilty on two counts of rape, and the trial court sentenced him to two consecutive life sentences.

### Admission of Mayerson Center Interview Recording

{¶9} In his first assignment of error, Williams argues that the trial court erred when it played the video recording of the interviews of N.W. and M.W. with the social worker from the Mayerson Center. Williams first argues that the interviews were testimonial as that term is defined in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We conclude that they were not.

{¶10} The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" Thus the Confrontation Clause bars the "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford* at 53-54. But *Crawford* does not apply if the statements are not testimonial. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 59.

{¶11} Statements made to medical personnel for the purpose of diagnosis or treatment are not testimonial under *Crawford* "because they are not even remotely related to the evils that the Confrontation Clause was designed to avoid." *Muttart* at ¶ 63. In determining whether a child's statements were made for the purpose of medical diagnosis or treatment, the factors to be examined include (1) the nature of the questioning—whether the interviewer asked leading or suggestive questions; (2)

4

whether the child had a reason to lie; (3) whether the child understood the need to tell the truth; (4) the age of the child at the time the statements were made; and (5) whether the child's statements were consistent. *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 7 (1st Dist.).

{¶12} In this case, the children's mother testified that she took the girls to the Mayerson Center "so they could advise me on what treatment the girls need." During the interview, the social worker did not use leading or suggestive questions. The children did not have a reason to lie, there was no evidence that the children had been coached, and the record demonstrates that they understood the importance of telling the truth. The children were both school-aged and gave accounts that were consistent with what they had reported to their mother and with how they testified at trial, except that M.W. claimed she could not recall if Williams actually penetrated her vagina with his finger. We conclude that the statements were made for the purpose of medical diagnosis and treatment, and the trial court did not err in admitting them. *See State v. Ridder*, 1st Dist. Hamilton No. C-150460, 2016-Ohio-5195, ¶ 9. Therefore they were not testimonial, and *Crawford* does not apply.

{¶13} But even if the statements had been testimonial, Williams's right to confrontation would not have been violated because both children testified at trial. The *Crawford* court noted that

> when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. It is therefore irrelevant that the reliability of some out-of-court statements " 'cannot be replicated, even if the declarant testifies to the same matters in court.' " The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

(Citations omitted.) *Crawford* at fn. 9; *see Lukacs* at ¶ 15 (holding that the Confrontation Clause was not implicated when the child-victim testified at trial).

{¶14}   So, having established that admission of the video recording does not violate the Confrontation Clause, the issue remains as to whether the children's statements in the video were hearsay to which no exception applies. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay statements are not admissible. *See* Evid.R. 802. But there are exceptions to that rule. In particular, Evid.R. 803(4) permits the admission of "[s]tatements made for the purpose of medical diagnosis and treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception of general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

{¶15}   In this case, we have determined that the statements were made to the social worker for the purpose of medical diagnosis or treatment. Therefore, while the statements were hearsay, they were admissible under the exception contained in Evid.R. 803(4). We overrule Williams's first assignment of error.

### Admission of Mother's Account of What Children Reported Was Not Prejudicial

{¶16}   In the second assignment of error, Williams claims that the trial court erred when it allowed the children's mother to testify as to what they told her about what had happened. The statements made to the mother were made months after the events occurred, and when the children's mother testified to what she had been told, that evidence was offered for its truth. The statements to the mother were hearsay to which no exception applied, and the trial court erred when it allowed the statements into evidence. *See* Evid.R. 802.

{¶17}   But even though this testimony constituted inadmissible hearsay, the jury was able to hear the same evidence through the interviews of the children at the Mayerson Center, the testimony of the social worker, and the testimony of the children at trial—all of which was properly admitted into evidence.  Generally, where other admissible substantive evidence mirrors improper hearsay, the error in allowing the hearsay is deemed harmless, since it would not have changed the outcome of the trial.  *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 43 (6th Dist.), citing *State v. Byrd*, 8th Dist. Cuyahoga No. 82145, 2003-Ohio-3958, ¶ 39; *see State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 82 (holding that the erroneous admission of evidence was not prejudicial where other evidence demonstrating the same point was properly admitted).  The admission of the testimony of the children's mother did not change the outcome of the trial.  We overrule Williams's second assignment of error.

### Sufficiency and Weight of the Evidence

{¶18}   In his third and fourth assignments of error, Williams claims that his convictions were based on insufficient evidence and were against the weight of the evidence.  In a challenge to the sufficiency of the evidence, the question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crimes beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  In reviewing a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and thereby created a manifest miscarriage of justice.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶19}   Both N.W. and M.W. testified at trial.   The jury also heard their accounts while watching their interviews with the social worker from the Mayerson Center, who also testified.   The lack of physical evidence or the fact that Williams presented testimony to dispute that the attacks could have happened in the way the girls described are insufficient to justifying reversal of the convictions.   *See State v. Hunter*, 144 Ohio App.3d 116, 120, 759 N.E.2d 809 (1st Dist.2001) (conviction for rape of a child was based on sufficient evidence and not against the manifest weight of the evidence even where there was no physical evidence of the attack and defendant presented testimony to dispute the allegations).

{¶20}   The weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact.   *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.   We find that Williams's convictions were supported by both the sufficiency and the weight of the evidence.   A rational trier of fact could have found the elements of rape were proven beyond a reasonable doubt.   Further, a review of the entire record establishes that the jury did not lose its way in finding Williams guilty.   The third and fourth assignments of error are overruled.

### Ineffective Assistance

{¶21}   In his fifth assignment of error, Williams claims that counsel was ineffective in failing to cross-examine the children and in failing to object to a statement made by the prosecutor after the direct examination of the younger daughter.

{¶22}   To succeed on his ineffective-assistance claim, Williams must establish that his trial counsel was deficient, and that, but for his counsel's errors, the result of the proceedings would have been different.   *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   This court has previously

said that "[t]he scope of cross-examination, however, falls within the ambit of trial strategy. Debatable tactics do not render counsel's assistance ineffective. This is particularly true in sex cases with minor victims where counsel may be wise to tread lightly in questioning." (Citations omitted.) *State v. Johnson*, 2016-Ohio-4934, 69 N.E.2d 143, ¶ 29 (1st Dist.). In this case, counsel disclosed that Williams had instructed him not to cross-examine the children. We cannot say that counsel was ineffective for failing to do so.

{¶23} Counsel was also not ineffective for failing to object to a comment of the prosecutor at the conclusion of M.W.'s direct examination. During her testimony, the child was obviously nervous, and she struggled throughout to remember and answer questions while her father sat feet away staring at her. When the questioning concluded, the prosecutor said "I'm very proud of you. I've known you a long time." While Williams characterizes this as bolstering the girl's testimony, that is not a fair reading of the statement. Failing to object to this otherwise innocuous statement, made to the child after she had clearly gone through a very uncomfortable examination, was an appropriate decision for defense counsel to make under the circumstances. The fifth assignment of error is overruled.

### Prosecutorial Misconduct

{¶24} In his sixth assignment of error, Williams claims that the statement made by the prosecutor to M.W., referenced in the preceding paragraph, constituted prosecutorial misconduct. But the Ohio Supreme Court has held that "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996), citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Considering the context of that comment and its isolated character, we hold

that it did not rise to the level of prejudicial misconduct. We overrule Williams's sixth assignment of error.

## Cumulative Error

{¶25} In his seventh assignment of error, Williams claims that while no single error alleged may amount to reversible error, the cumulative effect of the errors made the trial fundamentally unfair. Under the doctrine of cumulative error, a conviction may be reversed if the cumulative effect of errors deemed separately harmless is to deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. But, absent the admission of the mother's account of what her children had told her, Williams has demonstrated no error below. And we have established that any error in the admission of the mother's account of what her children had told her was harmless. We overrule Williams's seventh assignment of error.

## Sentencing Claims

{¶26} In his eighth assignment of error, Williams claims that the record does not support the sentences imposed by the court. Williams concedes that the sentences were within the statutory ranges, but argues that the "record does not support the sentencing court's findings that the consecutive life sentences were appropriate."

{¶27} R.C. 2929.14(C)(4) requires the trial court to make certain findings before imposing consecutive sentences. First, the trial court must find that consecutive sentences are necessary either to protect the public from future crime or to punish the offender. The court must then find the imposition of consecutive sentences is not disproportionate to the seriousness of the offender's conduct and the danger he poses to the public. Finally, the court must find one of the following

10

(a)  the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense;

(b)  at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or

(c)   the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶28}   In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus, the Ohio Supreme Court held that when a trial court imposes consecutive sentences, it must not only announce the requisite consecutive-sentencing findings at the sentencing hearing, but it must also incorporate those findings into the sentencing entry.  The trial court is not required to provide a "word-for-word recitation of the language in the statute" or to provide reasons to support the findings, as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings.  *Id.* at ¶ 29.

{¶29}   The record reflects that the trial court complied with *Bonnell*.  It made the required findings for consecutive sentences during the sentencing hearing and incorporated those findings into the sentencing entry.  The trial court found that

consecutive sentences were necessary to protect the public and to punish Williams, and were not disproportionate to the seriousness of Williams's conduct and the danger that Williams posed to the public. The trial court also found that the two offenses were committed as part of one or more courses of conduct, and the harm caused by the two offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Williams's conduct. The trial court was not required to make further findings, and these findings were supported by the record. *See State v. Ruff*, 1st Dist. Hamilton Nos. C-160385 and C-160386, 2017-Ohio-1430, ¶ 24, citing *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 32. We overrule Williams's eighth assignment of error.

{¶30}   In his ninth assignment of error, Williams claims that the imposition of two, consecutive life sentences resulted in a denial of his right to due process and constituted cruel and unusual punishment. The Eighth Amendment " 'does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime.' " *State v. Weitbrecht*, 86 Ohio St.3d 368, 371-372, 715 N.E.2d 167 (1999), quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Cases in which cruel and unusual punishments have been found are "limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964). To violate the prohibition against cruel and unusual punishment, the penalty must be "so greatly disproportionate to the offense as to shock the sense of justice of the community." *Id.*

{¶31}   The life sentences imposed here were mandated by statute, a statute that Williams did not challenge. *See State v. McConnell*, 2d Dist. Montgomery No.

19993, 2004-Ohio-4263, ¶ 139, citing R.C. 2907.02(B). "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history." *Harmelin* at 994-995. A sentence that falls within the terms of a valid statute generally cannot amount to cruel and unusual punishment. *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 21, citing *McDougle* at 69, 203 N.E.2d 334. While Williams argued that the "consecutive life terms on the two rapes violated Due Process and the prohibition against cruel and unusual punishment," the Eighth Amendment proportionality review does not apply to consecutive sentences. *Hairston* at ¶ 20.

{¶32} The fact that Williams turned down a plea offer that would have resulted in a six-year prison sentence does not change this result. On several occasions before the trial, Williams was given the opportunity to plead to one count of gross sexual imposition. The lower proposed sentence was conditioned upon Williams agreeing to plead guilty to one, lesser charge. Williams repeatedly refused to enter such a plea, and was instead found guilty of two counts of rape of a child under the age of ten, for which life in prison was the sentence. We overrule Williams's ninth assignment of error.

### Conclusion

{¶33} Having considered and overruled all nine assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS** and **MYERS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.