[Cite as *In re C.A. Children*, 2020-Ohio-5243.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


IN RE: C.A. CHILDREN
:          APPEAL NO. C-200172
           TRIAL NO. F19-0770Z
:
:          *O P I N I O N.*


Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 10, 2020


*Tibbs Law Office, LLC,* and *Daryle C. Tibbs*, for Appellant Father,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alyssa Miller*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Megan E. Busam*, Assistant Public Defender, Guardian ad Litem for the children.

**MYERS, Presiding Judge.**

{¶1} Father challenges the Hamilton County Juvenile Court's judgment adjudicating one of his children abused, neglected, and dependent, and two of his children dependent. The child's guardian ad litem ("GAL") and the Hamilton County Department of Job and Family Services ("HCJFS") ask this court to affirm the juvenile court's judgment. Mother of the children has not appealed.

## I. Background and Procedural History

{¶2} Father has three children with mother. In May 2019, their 13-year-old daughter, LCA, disclosed at school that she had been sexually and physically abused by father. LCA was transported from her school to the Mayerson Center at Children's Hospital, where she was interviewed by a social worker.

{¶3} HCJFS received interim custody of LCA and her brothers, aged 12 and seven, and filed a complaint for temporary custody, alleging that the children were abused, neglected, and dependent.

{¶4} Prior to the adjudication hearing, father and mother filed motions in limine regarding LCA's interview at the Mayerson Center. The magistrate denied the motions, adjudicated LCA abused, neglected, and dependent, and awarded temporary custody to HCJFS. The magistrate adjudicated the boys, OCA and JCA, dependent, and placed them into the protective supervision of HCJFS. Thereafter, the juvenile court overruled father's objections and adopted the magistrate's decision. Father now appeals.

## II. The Mayerson Center Interview

{¶5} In his first assignment of error, father argues that the juvenile court erred by denying his motion in limine and allowing witnesses to testify about LCA's Mayerson Center interview and by allowing the Mayerson Center report into

evidence. He argues that the evidence was hearsay and was not admissible under the exception in Evid.R. 803(4) for statements made for purposes of medical diagnosis or treatment.

{¶6} First, we point out that a motion in limine "is tentative and precautionary in nature, reflecting the [trial] court's anticipatory treatment of an evidentiary issue at trial." *Defiance v. Kretz*, 60 Ohio St.3d 1, 4, 573 N.E.2d 32 (1991). Therefore, a trial court's disposition of a motion in limine such as the one in this case is ultimately irrelevant because the trial court may change its ruling on the disputed evidence when it is presented in context at trial, and the issue must be revisited at trial to preserve the party's position on the evidentiary issue. *State v. Morales*, 1st Dist. Hamilton No. C-120670, 2014-Ohio-362, ¶ 45. Here, father objected to the evidence at trial, thereby preserving the issue for appeal.

{¶7} At the adjudication hearing, the social worker from the Mayerson Center testified that the purpose of the interview with LCA, as with any abuse-related interview, was to assess LCA for medical or mental-health needs. After every such interview, the social worker meets with a physician at the hospital to determine if a child is in need of medical treatment or mental-health services.

{¶8} In the interview, LCA described acts of sexual and physical abuse and identified the areas of her body that father had touched. At the suggestion of a detective, the social worker used an anatomical drawing to clarify which parts of the body the child was referring to. Because the child complained of pain and bleeding, a physician examined her that day. In addition, because LCA reported that she was suicidal, the social worker discussed with HCJFS the need for a safety plan and for an assessment for mental-health services.

{¶9} This court has held that statements made by a child victim to a social worker at the Mayerson Center may be admissible under Evid.R. 803(4) as statements for purposes of medical diagnosis or treatment. *State v. Ridder*, 1st Dist. Hamilton No. C-150460, 2016-Ohio-5195, ¶ 7; *State v. Bowers*, 1st Dist. Hamilton No. C-150024, 2016-Ohio-904, ¶ 20-24; *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 8 (1st Dist.). In determining whether a child's statements were made for the purpose of medical diagnosis or treatment, the trial court should consider (1) whether the child was questioned in a leading or suggestive manner; (2) whether the child had a motive to lie, such as a pending custody battle; (3) whether the child understood the need to tell the truth; (4) the child's age; and (5) whether the child's statements were consistent. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 49; *State v. Williams*, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 11 (1st Dist.). The trial court has broad discretion to admit testimony under this hearsay exception. *Lukacs* at ¶ 7; *Muttart* at ¶ 56.

{¶10} Here, the juvenile court specifically considered each of these factors and determined that the child's statement was made for the purpose of medical diagnosis or treatment. The court noted the social worker's testimony about her training for conducting forensic interviews, including the use of open-ended, non-leading, and "non-bias" questions. Although there was no specific testimony about the exact nature of her interview with LCA, the juvenile court pointed out that there was no indication that the social worker had deviated from her typical protocol and training for the interview with LCA.

{¶11} The juvenile court noted father's assertion that LCA had a motive to fabricate the sexual abuse because he had recently disciplined her for going to a friend's home without permission. The child relayed to the social worker that father

4

had dragged her out of the home by her hair and had beaten her with a garden hose. As the juvenile court pointed out, the child's statements about the physical nature of the discipline were corroborated by statements made by mother and by an injury to LCA's lip.

{¶12} As to whether the child understood the need to tell the truth, the juvenile court noted that both the social worker and the HCJFS caseworker testified that they had advised the child of the importance of telling the truth. The court noted that the child was 13 years old at the time of the interview, and that the child answered the questions in an age-appropriate manner. The court also noted the social worker's testimony that the child was consistent in her statements.

{¶13} Based on the foregoing, we hold that the juvenile court did not abuse its discretion in finding that the child's statements were made for purposes of medical diagnosis or treatment and, therefore, admissible under Evid.R. 803(4). The social worker did not ask leading or suggestive questions in such interviews. Although father asserted that his recent discipline of LCA provided a motive for her to lie, his assertion did not mention the physical nature of the discipline, which was confirmed by mother's statements and by an injury to LCA's face. Additionally, the social worker and caseworker impressed upon LCA the need to tell the truth, LCA's responses were age-appropriate, and they were consistent.

{¶14} Father argues that there was no indication that the child understood she was being questioned for medical purposes. However, the social worker testified that she explained to the child that her job was to talk to kids about keeping their bodies safe and healthy, and she asked the child if she had any medical concerns about her body or anything that she would like to talk to a doctor about. The child apparently understood that her responses would be considered for medical purposes

because she relayed her concern that she had experienced pain and bleeding after an incident of abuse.

{¶15} Father also argues that the child's statements were not made for purposes of medical treatment or diagnosis but were made for the collection of evidence for a potential criminal investigation. The Supreme Court of Ohio has recognized that the nature of an interview of a child victim at a child-advocacy center is unique in that multidisciplinary teams coordinate to ensure that a child will not have to retell the story of abuse multiple times. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 33. The interview, therefore, may serve dual purposes—eliciting information for medical diagnosis or treatment and for potential criminal prosecution. *Id.* However, if, as here, the primary purpose of the interview is for medical diagnosis and treatment, the fact that the information is subsequently used for prosecution does not change the interview's initial purpose. *Id.* at ¶ 43; *Muttart* at ¶ 62. Accordingly, we overrule the first assignment of error.

### III. Adjudications of Abuse, Neglect, and Dependency

{¶16} In his second and third assignments of error, father argues that the juvenile court erred by adjudicating LCA abused, neglected, and dependent, and her brothers OCA and JCA dependent.

{¶17} Adjudications of abuse, neglect, or dependency must be supported by clear and convincing evidence. *See* Juv.R. 29(E)(4). Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42. Because all three of the children were adjudicated dependent, we start our analysis there.

### A. Dependency

{¶18} The juvenile court found that all three children were "dependent" under R.C. 2151.04(C), which defines a "dependent child" as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship."

### 1. LCA

{¶19} The court found LCA dependent under R.C. 2151.04(C) because father had sexually and physically abused her and because mother failed to demonstrate an adequate protective capacity for the child. The court's findings were supported by clear and convincing evidence.

{¶20} According to the Mayerson Center report, LCA reported that the first incident of sexual abuse occurred when she was 11 years old on a camping trip with her father, uncle, and brothers. LCA said she was sleeping in a bed with father and her brother, and father started kissing and hugging her and moving his hands all over her. LCA said she left to go to the bathroom and that when she returned, father tried to touch her again.

{¶21} LCA reported that when she was 12 years old, father had her lay on the couch with him and he put his hands on her breasts and kissed her neck and ear.

{¶22} LCA reported that another time, when she was in the kitchen, father came up behind her, hugged her, kissed her on the neck, and tried to kiss her on the mouth. She said that father pulled her pants and underwear down and then started touching her private area with his hand and touched inside of her body. Father then pulled his pants and underwear down and put his penis on her private area and began to move back and forth. She reported that father used a towel to clean them both, and that she was cleaning up "sperm from in between her area."

{¶23} LCA reported that another time, father tried to do the same to her on the couch in their home. He had her lay on the couch with him and he started to touch her. He pulled her pants down and began rubbing his penis back and forth against her "butt," but then her brothers came in, so father went to the bathroom to clean himself. LCA reported that she had "sperm" on her.

{¶24} LCA reported that father's sexual abuse occurred about two to three times a week. She said that it usually occurred while mother was at work and while her brothers were not in the room or were outside. She said that one time, when she wiped "sperm" from her "butt," her "butt" was bloody and rough and was painful.

{¶25} According to LCA, father told her that he would kill her if she told anyone of the abuse. LCA reported that when she disclosed the sexual abuse to mother, mother told her to stay away from father and that she was going to treat LCA "like a woman now."

{¶26} In addition, a detective testified that mother told him that there was an incident where the children were supposed to be going to an ice cream social, but LCA went with her friends to a residence. One of LCA's brothers told father that LCA went to her friend's house. According to the Mayerson Center social worker, LCA disclosed that father showed up at the friend's home with her brother, dragged LCA out of the house by her hair, and then dropped her brother off at school. LCA reported that father hit her in the mouth as he drove and that, when they got home, he hit her with a water hose. The Mayerson Center physical examination listed LCA's lower lip and right leg to be "area[s] of concern."

{¶27} Given the abuse described by LCA and mother's failure to adequately protect LCA, the juvenile court's finding that LCA was dependent under R.C. 2151.04(C) was supported by clear and convincing evidence.

## 2. OCA and JCA

{¶28} The juvenile court found that LCA's brothers, OCA and JCA, were dependent because, given father's physical abuse of LCA, the boys might be at risk for physical abuse.

{¶29} Father argues that there was no evidence of the boys' environment from which the court could make a dependency finding under R.C. 2151.04(C). He asserts that there was no evidence that the boys lived in the same home as LCA or that they had been exposed to father's behaviors. However, according to the Mayerson report, LCA reported that she lived with her mother, father, and two brothers. And the HCJFS caseworker testified that all three children lived in the same home with their parents.

{¶30} The juvenile court's finding that OCA and JCA were dependent under R.C. 2151.04(C) was supported by clear and convincing evidence. One of the boys witnessed father dragging LCA by her hair, one of the boys was in bed with LCA and father during the first episode of sexual abuse, and both boys walked in as father was sexually abusing LCA with her pants down. Based on that evidence, the juvenile court reasonably could conclude that the boys were in danger of harm.

### B. Abuse

{¶31} Under R.C. 2151.031, an "abused child" includes any child who:

(A) Is the victim of "sexual activity" as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child;

9

(B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child;

(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. * * *[;]

(D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare[;]

(E) Is subjected to out-of-home care child abuse.

{¶32} The juvenile court found that LCA was an abused child under R.C. 2151.031(A), (B), (C), and (D) based upon her disclosures of physical and sexual abuse.

{¶33} Under R.C. 2151.031(A) an abused child is one who is the victim of "sexual activity," which is defined in R.C. 2907.01 to mean sexual conduct or sexual contact, or both. *See* R.C. 2907.01(C). Father's conduct in putting his hand or fingers into LCA's vagina constituted "sexual conduct" under R.C. 2907.01(A), which includes "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another" without privilege to do so. Father's conduct in touching LCA's thigh, genitals, anal area, public region, and breast, "for the purpose of sexually arousing or gratifying either person" constituted "sexual contact" under R.C. 2907.01(B). Because LCA was the victim of sexual activity, she was an abused child under R.C. 2151.031(A).

{¶34} Under R.C. 2151.031(B), an abused child is one who is endangered as defined in R.C. 2919.22. R.C. 2919.22(A) prohibits a parent from, among other things, creating a substantial risk to a child's health or safety by violating a duty of care or support, or abusing a child. R.C. 2919.22(B)(1) prohibits a person from abusing a child. Due to father's sexual and physical abuse, LCA was endangered, and therefore, she was an abused child under R.C. 2151.031(B).

{¶35} Under R.C. 2151.031(C), an abused child "exhibits evidence of any physical or mental injury * * * inflicted other than by accidental means." And under R.C. 2151.031(D) an abused child is one who, because of the acts of her parents, suffers physical or mental injury that harms or threatens to harm the child's health or welfare. Due to father's sexual and physical abuse, LCA suffered bleeding and pain to her anal area, as well as an injury to her lip, and reported that she was suicidal. Therefore, LCA was an abused child under R.C. 2151.031(C) and (D).

{¶36} Thus, the juvenile court's findings that LCA was an abused child under R.C. 2151.031(A), (B), (C), and (D), were supported by clear and convincing evidence.

### C. Neglect

{¶37} The juvenile court also determined that LCA was a "neglected child" under R.C. 2151.03(A)(2) because she "lacks adequate parental care because of the faults or habits" of her parents. R.C. 2151.011(B)(1) defines "adequate parental care" to include among other things "the provision by a child's parent or parents * * * of adequate * * * shelter to ensure the child's health and physical safety." Ohio courts have construed this to include a parent's inability and unwillingness to provide her children with shelter to protect their physical health and safety from ongoing domestic violence. *In re T.B.*, 12th Dist. Fayette No. CA2014-09-019, 2015-Ohio-2580; *In re A.C.*, 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933, ¶ 51 (ongoing

11

domestic violence in the home, among other concerns, supported a finding of neglect under R.C. 2151.03(A)(2)). Here, the court found that LCA lacked adequate parental care due to father's sexual and physical abuse and to mother's failure to adequately protect LCA following the disclosure of abuse. The court referred specifically to the fact that, after LCA disclosed father's history of sexual abuse, mother allowed father to sleep "unsupervised" in the same home with LCA. Therefore, competent, credible evidence supported the juvenile court's determination that LCA was neglected under R.C. 2151.03(A)(2) because father and mother failed to provide adequate parental care to LCA by ensuring her health and physical safety. We overrule father's second and third assignments of error.

## VI. Conclusion

{¶38} Consequently, we overrule father's assignments of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**CROUSE** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.